[Crim. No. 498. Department One.—October 23, 1899.]

THE PEOPLE, Respondent, v. MARK SCHOEDDE, Appellant.

CRIMINAL LAW—MAYHEM—ALIBI—AIDING AND ABETTING.—Where there was conflicting evidence as to whether the defendant was present at the commission of a mayhem by castration, and if an *alibi* was proved, there was no sufficient evidence to indicate an aiding and abetting that would make him a principal in the crime, it was error to instruct the jury that they need not acquit the defendant, even though they believed that he was not present at the commission of the crime.

ID.—INSTRUCTION AS TO REASONABLE DOUBT—MORAL CONVICTION OF GUILT.—An instruction that if the jury are morally convinced of the guilt of the defendant, and fully satisfied of the truth of the charge, they are convinced beyond a reasonable doubt, and should convict the defendant, is not perfectly sound, and should not be given. An instruction as to reasonable doubt should be confined to the approved definition declared unobjectionable by this court.

ID.—INSTRUCTION AS TO ABSENCE OF JUSTIFICATION.—An instruction "that there has been no evidence introduced in this case which tends in the slightest degree to show any justification of the crime alleged in the information," borders dangerously upon matter of fact, and should not be given.

APPEAL from a judgment of the Superior Court of Santa Clara County and from an order denying a new trial. Lucas F. Smith, Judge.

The facts are stated in the opinion of the court.

Joseph H. Skirm, Howell C. Moore, and Louis O'Neal, for Appellant.

Tirey L. Ford, Attorney General, C. N. Post, Assistant, and William M. Abbott, Deputy, for Respondent.

GAROUTTE, J.—Defendant has been convicted of the crime of mayhem, and appeals from the judgment and order denying his motion for a new trial.

By the information he is charged with the castration of one Harris in the city of Santa Cruz, June 21, 1897. It is strenuously insisted by him that the evidence fails to support the charge. In its facts the case is peculiar. It is undisputed that Harris was castrated upon the early Monday morning of June 21st at a lodging-house in the city of Santa Cruz. It is also conceded that the defendant, a veterinary surgeon, was hired by one Plyler to do the work, and that upon the preceding Saturday he traveled from the city of San Jose to Santa Cruz in company with Plyler, Plyler's wife, and others for the purpose of committing this crime. The crime, by agreement of the conspirators, was to have been committed in an outlying part of the city upon Sunday morning, June 20th. In fact, it was committed in a lodging-house of the city upon the following Monday morning. Upon this Monday, Schoedde, the defendant, told various parties in the city of San Jose that he had castrated Harris in Santa Cruz upon the preceding day, and thereupon exhibited to them the members of Harris' body as evidence of the fact. Standing alone, the foregoing facts as evidence of defendant's guilt could hardly be stronger; but in defense, various witnesses, apparently entirely credible, testified that Schoedde, the defendant, returned to San Jose from Santa Cruz Sunday evening, and it is now conceded that, if such evidence be true, he was not present at the commission of the crime. The defendant, when upon the witness stand, declared that upon Sunday morning he determined to withdraw from the conspiracy, and that he thereupon returned to San Jose upon Sunday evening, and in connection with this evidence various disinterested persons testified that they saw him upon

the train at that time while en route from Santa Cruz to San Jose. The defendant also declared that Plyler, a conspirator and the principal, gave him the members of Harris' body in San Jose upon Monday, and he further declared upon the witness stand that he was flatly and entirely lying when he told the various parties in San Jose upon Monday that he committed the crime. Upon the foregoing state of facts, it is apparent that the jury had a difficult duty to perform in getting at the truth. Measured by his sworn statements defendant was a colossal liar, willing to be hired for money to commit a felony. Measured by his unsworn statements he committed a crime which marked him as a villain of the deepest dye. Hence, we say it was a most peculiar case in its facts, and a case presenting serious difficulties to a jury. Yet it was a case presenting facts only, and facts are matters which a jury alone is authorized to weigh and sift and pass upon. It can only be said that there exists a substantial and direct conflict in the evidence, and the truth of the matter rested with the jury.

There is a claim made by the people that, even conceding defendant did not actually participate in the commission of the crime, but returned to San Jose upon Sunday evening, still he was an aider and abettor, and equally guilty with Plyler. The general principle here contended for is sound, but its application to the facts of this case is wanting. We will not go at length into a discussion of this contention. It is sufficient to say that under the evidence disclosed by this record, if it be conceded that the defendant was not at Santa Cruz when the crime was committed, but had previously returned to San Jose upon Sunday evening, as testified to by various witnesses, then the verdict has not sufficient support in the evidence. In other words, under the evidence there is not disclosed that aiding and abetting by defendant which would make him a principal in the crime.

A great many instructions as to the law bearing upon this particular branch of the case were given to the jury, but in view of what has been said we pass them by without extended consideration; for, assuming that the evidence upon a second trial as to this point will be the same, no instructions should be given bearing upon the facts in this regard. As illustra-

tive of this class of instructions the following may be cited: "Even though you believe the defendant was not present at the commission of the alleged crime, it does not necessarily follow that you must acquit him." In view of the evidence, we are satisfied that the defendant should have been acquitted, unless he was present at the commission of the crime.

From what has been said a new trial must be ordered. It is impossible to say from the verdict and the instructions whether the jury found that the defendant was present at the time the crime was actually committed, and participated in that commission, or whether they found that, though he was in San Jose at the time of the commission of the crime, still he was guilty as an aider and abettor. As we have seen, if the jury based its verdict of guilty upon the ground that the defendant was simply an aider and abettor of the crime, then the evidence does not justify the verdict. The court gave the following instruction to the jury: "If, after a careful and impartial consideration of all the evidence in the case, you can say and feel that you are morally convinced of the guilt of the defendant, and are fully satisfied of the truth of the charge, then you are convinced beyond a reasonable doubt, and your verdict should be one of conviction." This instruction has some support in a few of the early decisions of this court, but it is not a perfectly sound legal instruction by any means, and should never be given. It is better by all means to define a reasonable doubt in the way so often declared unobjectionable by this court, rather than attempt new departures.

The court also gave the following instruction: "I instruct you further that there has been no evidence introduced in this case which tends in the slightest degree to show any justification of the crime alleged in the information." This instruction comes very near the border line of error as charging the jury upon matters of fact. It should not be given upon a second trial.

For the foregoing reasons the judgment and order are reversed and the cause remanded.

Van Dyke, J., and Harrison, J., concurred.