[Crim. No. 1783.   Third Dist.   Jan. 21, 1942.]

THE PEOPLE, Respondent, v. HAROLD HUNTER, Appellant.

J. R. Thomas and Newell Rawles for Appellant.

Earl Warren, Attorney General, and J. Q. Brown, Deputy Attorney General, for Respondent.

THOMPSON, Acting P. J.—The defendant was convicted on two counts of an information charging him with kidnaping different young girls, under sixteen years of age, contrary to the provisions of section 207 of the Penal Code. In a

third count he was charged with the crime of rape with relation to one of the girls. The jury acquitted him of the last-mentioned charge. From the judgment of conviction of the first two offenses and from the order denying a new trial he has appealed.

The appellant contends that the verdicts and judgment of conviction of the crimes of kidnaping are not supported by the evidence, that the identity of the defendant as the perpetrator of the first alleged crime was not established, and that the district attorney was guilty of prejudicial misconduct in calumnious references which he made regarding the defendant, in the course of the trial and in his argument to the jury.

The first count charges the defendant with forcibly seizing, without authority or right, a young girl on November 10, 1940, in Ukiah, Mendocino County, and carrying her to another part of the same county, against her will.

The second count accuses him of forcibly taking another young girl on July 1, 1941, without right or authority, from a point on the Redwood Highway near Ukiah, and transporting her to another part of the same county, without her consent.

The information alleges no purpose or intent, on the part of the defendant, in kidnaping the girls. Although the jury acquitted the defendant of the actual commission of the crime of rape, as alleged in the third count, it is apparent that his purpose, in both instances, was to ravish the girls. The defendant had been enrolled with the Civilian Conservation Corps in that vicinity. He was discharged from that camp a few months prior to the date of the first alleged offense. He was twenty-three years of age. He was tall, slender and dark-complexioned. He was a total stranger to the girls, never having met either of them before the perpetration of the offenses charged. He came from Fort Bragg, but he was in and about Ukiah on both dates when he was charged with the offenses. He had been previously convicted of robbery.

The first girl kidnaped was an intelligent high school student residing in Ukiah. She had a good reputation. About six o'clock on the evening of November 10, 1940, she started to walk along the roadway adjacent to the railroad track, from her residence on Perkins Street, a distance of several blocks, to the home of a young lady friend, on Nor-

ton Street. It was dusk, but it was not raining and she was able to see quite clearly. She observed a man following her on the opposite side of the road. There were no other pedestrians in sight. As she approached a bridge the defendant overtook her and attempted to engage her in conversation. He waited until an approaching automobile passed them, and then, without warning, he deliberately seized her and dragged her across the track behind a pile of railroad ties. She screamed and struggled to secure her release. He placed his hand over her mouth to prevent her from being heard. She was terribly frightened. He then attempted to kiss her while he continued to hold her by the wrist. After some scuffling she managed to jerk away and fled from his presence. She testified that he was a tall, dark-complexioned young man; that he had dark hair, and he wore a dark hat and a plaid woolen jacket. She positively identified him as he sat in the court room between two other strangers as the man who kidnaped her on that occasion. She also identified a plaid jacket which was taken by the sheriff from the defendant at the time of his arrest, and which was produced in court, as the one he wore at the time of the assault. It is true that a companion of the defendant, who worked with him in the C. C. C. camp and elsewhere, testified that he sold that jacket to the defendant in May, 1941, for the sum of fifty cents.' But his evidence in that regard was conflicting and unsatisfactory. The jury was warranted in disbelieving his story. Another disinterested man testified that the defendant came to his restaurant in the vicinity of the place where the crime was committed at seven o'clock that same night and sat about for some time, and that he was then wearing a "woolen jacket."

The defendant testified that he was staying on the Guntley ranch, on the Low Gap Road, in Coyote Valley, near Ukiah, and that he often visited in that city. He would not swear that he was not in Ukiah on November 10, 1940, the date of the alleged assault. He did deny that he kidnaped the young girl as alleged, or that he had ever seen her until shortly before the trial of the case. He also denied that he owned or wore the plaid jacket before May, 1941, at which time he purchased it from his friend. Robert Grazini, who ran a restaurant in Coyote Valley, near Ukiah, testified that the defendant came into his restaurant about seven o'clock on the evening of November 10, 1940, and sat around there

for some time and that he was then wearing a woolen jacket.

The young girl upon whom the defendant is charged in the second count of the indictment with making an attack on July 1, 1941, was only thirteen years of age. She was living with her parents in Leggett Valley on the Redwood Highway above Ukiah. She is also an intelligent girl, who was then attending the eighth grade of an elementary school. About two o'clock on the afternoon of that day, she left home in company with a young girl friend. They proceeded up the Redwood Highway for some distance to pick fruit in an orchard owned by Mr. Lavender. As they passed Terrill's Inn on the Redwood Highway the defendant accosted them, and without an invitation followed the girls to the Lavender orchard, where all three of them spent some time picking cherries. The girls then started to return southerly along the highway. The defendant accompanied them. When they reached the intersection of the Fort Bragg road, the defendant gave one of the girls fifteen cents with which to buy her a milk shake at Terrill's place some distance beyond that point. She went on her way. The defendant then detained the complaining witness, saying he wanted to talk with her. After the other girl disappeared in the Terrill place, the defendant asked the prosecutrix to cross the roadway to the shelter of a shade tree, where they could talk, which she did. There was then no other person in sight. He at once seized her and violently kissed her, at the same time making improper proposals. She testified that she kicked, scratched, struggled and resisted his advances as best she could, but that he picked her up and carried her along an old roadway a distance of some sixty yards into a clump of bushes on a wooded hill. While doing so he held his hand over her mouth to prevent her from screaming. Upon arriving at that secluded spot, she said that he dropped her upon the ground, and overcoming her resistance, he tore her clothing and succeeded in having sexual intercourse with her. She claimed to have been frightened and that she was helpless to prevent the act. He then released her, and she fled from his presence down the roadway to the highway and thence to the Terrill Inn, where she found her girl friend waiting for her.

When she arrived at Terrill's Inn, she was weeping and disheveled. Her clothing was torn, a seam in her dress was ripped open, her belt was hanging down on one side and her

face was inflamed. A welt and other red marks were visible on the right side of her face. She told her friend all about the affair and she corroborated the last-mentioned facts. Two other disinterested witnesses corroborated the evidence regarding the condition in which she returned home. Her mother said that when she returned her face was so inflamed that she at first thought she had the hives. Mr. Joseph Jones, a millhand who had previously worked with the defendant, testified that he told him about July 1st all about the sordid affair and boasted of his success. The defendant did not deny his presence with the girls on the highway and in the cherry orchard on that occasion. Indeed, he could not consistently refute those facts. But, naturally, he did deny that he carried her away by force, and he denied having intercourse with her. There is absolutely no question regarding his identity with respect to the last two offenses charged in the information.

There is ample evidence to support the verdicts and judgment of conviction on the kidnaping charges. The identity of the defendant was sufficiently established on both counts. The defendant does not deny that he was present at the time of the last offense. The first prosecuting witness recognized him as the man who kidnaped her on November 10th. It was then dusk, but she said that she plainly saw him. The defendant conforms to the description of the man she said attacked her on that occasion. She testified that he was a tall, dark-complexioned young man who wore a dark hat and a plaid jacket. She identified the defendant's jacket which was produced in court as the one he then wore. The method followed by the assailants of the two girls in seizing them by force and carrying them away, with their hands held over the mouths of their victims, is similar. The defendant was in Ukiah the very day of the first offense. Both offenses were committed in the same vicinity and within a comparatively brief period of time. We have no doubt of the identity of the defendant as the perpetrator of both offenses.

The question of the identity of a defendant who is charged with a crime is ordinarily a problem for the determination of the jury. The credibility of witnesses and the weight to be given the evidence in that regard are peculiarly within the province of the jury. Where there is substantial evidence to support the finding of a jury with respect to the

identity of a defendant, the verdict and judgment will not be disturbed on appeal. (*People* v. *Waller,* 14 Cal. (2d) 693, 700 [96 Pac. (2d) 344] ; *People* v. *Farrington,* 213 Cal. 459 [2 Pac. (2d) 814] ; *People* v. *Deal,* 42 Cal. App. (2d) 33 [108 Pac. (2d) 103] ; *People* v. *Denton,* 22 Cal. App. (2d) 673 [72 Pac. (2d) 191].) Quoting with approval from the Farrington case, *supra,* it is said in that regard in *People* v. *Waller, supra*:

" 'The strength or weakness of the identification, the incompatibility of the discrepancies in the testimony, if there were any, and the uncertainties of the witnesses in giving their testimony were matters solely for the observation and consideration of the jurors in the first instance, and for the consideration of the trial court on motion for a new trial.' "

We may not say, under the circumstances of this case, that the testimony of the prosecuting witnesses is inherently improbable. Indeed, their testimony appears to be inherently probable, when it is viewed in the light of the surrounding circumstances. An appellate court may not interfere with the province of the jury and the trial court by reversing a judgment on the ground that the testimony of a prosecuting witness is inherently improbable, unless it is so clearly false and unbelievable as to leave no reasonable doubt in that regard. (*People* v. *Jefferson,* 31 Cal. App. (2d) 562, 566 [88 Pac. (2d) 238].)

It is true that the prosecuting witness testified to circumstances applicable to the third count which constitute rape. It is a fact that the jury nevertheless acquitted the defendant of that charge. The appellant argues that the verdict of acquittal on that charge indicates that the jury did not believe her story with respect to the alleged crime of rape, and that it is therefore inconsistent to hold that the jury could nevertheless believe her story insofar as it applies only to the charge of kidnaping the girl as a part of the same affair. This conclusion does not necessarily follow. The jury may have doubted whether one necessary element of the crime of rape, such as actual penetration, occurred. We are not called upon to speculate on the reason or motive which prompted the jury to acquit the defendant of the crime of rape. For the purpose of this appeal it is our province, only, to determine whether there is sufficient evidence to support the alleged crimes of kidnaping. We are of the opinion the

record contains ample evidence to support the verdicts and judgment of conviction of the crimes of kidnaping. ■ It was not necessary to allege or prove the intent or purpose with which the defendant kidnaped the girls under the circumstances of this case. (*People* v. *Bruno,* 49 Cal. App. 372 [193 Pac. 511]; *People* v. *Fernandes,* 127 Cal. App. 45 [15 Pac. (2d) 172].) It is true that section 207 of the Penal Code defines several different crimes of kidnaping, some of which do require allegations and proof of the intent or purpose with which a person is taken and transported from one state or county to another. But there is no contention that this case falls within those classes of kidnaping.

■ The district attorney was not guilty of prejudicial misconduct in asking the defendant on cross-examination whether he was in the sheriff's office in Mendocino County in November, 1940. The defendant had denied that he was guilty of the crime of kidnaping at Ukiah on November 10, 1940. He denied that he had ever seen the girl. He evidently tried to create the impression that he was not in Ukiah on that date. It was an effort to establish an alibi. He had testified that he ''might have been in Sacramento or some other place'' on that date. It therefore constituted proper cross-examination to ask him, ''Do you know whether or not you were in the sheriff's office in Mendocino County during the month of November, 1940?'' We assume the question was asked in good faith, and that he might have been impeached if he falsely swore that he was not in that office during November, 1940.

■ Nor was it prejudicial misconduct for the district attorney to argue, in his closing address to the jury, that the defendant was ''shown to be a person of a vicious personality,'' or that he was like a vulture, except that he was preying upon the bodies of young girls. No objection to those statements was made at the trial, and the court was not asked to instruct the jury to disregard them. The defendant waived his objection to the prejudicial nature of the challenged statements by failing to assign them as error and by neglecting to ask the court to instruct the jury to disregard them. (*People* v. *Swenson,* 28 Cal. App. (2d) 636, 641 [83 Pac. (2d) 70]; *Rogers* v. *Foppiano,* 23 Cal. App. (2d) 87, 95 [72 Pac. (2d) 239].) We do not approve of extravagant and opprobrious language in arguments to juries, especially

in criminal cases. They frequently indicate the presence of passion and prejudice, or at least an excess of zeal. There should be an effort to confine arguments to the realm of sobriety, logic and reason. In the present case the comparison of the defendant to a vulture was inappropriate and we think improper, but it did not constitute prejudicial misconduct for the reason heretofore mentioned.

The judgment and the order are affirmed.

Steel, J. pro tem., and Tuttle, J., concurred.