THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. PIETRO SILVERIO, PLAINTIFF IN ERROR.

Submitted March 21, 1910—Decided June 20, 1910.

1. Defendant is not prejudiced by a definition of "reasonable doubt" as "the want of an abiding conviction of guilt, a conviction which shall rest with you all the days of your life."

2. Upon a charge of murder, where the fact of killing is first made to appear, the law presumes it to be malicious until the contrary appears; so that it is incumbent upon the defendant to adduce evidence of the facts and circumstances from which justification, excuse or extenuation may arise, unless such facts or circumstances appear from the evidence introduced against him.

3. Malice, in the law, is manifested by the intentional doing of a wrongful act to the injury of another, without just cause or excuse. In the law of homicide it may mean either an intent to do serious bodily harm, or an intent to take life.

4. Where one human being kills another, it is not to be presumed without evidence that the person committed the act unconsciously, or accidentally, or while insane. And when the killing is done by the use of a deadly weapon—an instrument that, as used, may produce either death or at least serious bodily injury—the presumption, until the contrary appears, is that at least serious bodily injury was intended.

5. Refusal by the trial judge to instruct the jury that "in case of doubt good character should turn the scale," or that "good character is of itself a sufficient fact from which a reasonable doubt may arise," furnishes no ground for reversal.

On error to Passaic County Court of Oyer and Terminer.

For the plaintiff in error, *Joseph A. Furrey.*

For the defendant in error, *Eugene Emley,* prosecutor of the pleas.

The opinion of the court was delivered by

PITNEY, CHANCELLOR. The plaintiff in error, having been found guilty by the verdict of a jury of the crime of murder in the first degree and thereupon sentenced to death, brings the record of his conviction before this court for review. There are bills of exception taken and sealed pursuant to section 135 of the Criminal Procedure act (*Pamph. L.* 1898, *p.* 914), but no certificate of "the entire record of the proceedings had upon the trial" for review under section 136.

The first contention raised in behalf of the plaintiff in error is that he was not properly before the Court of Oyer and Terminer for trial, the indictment having been returned into the Court of Quarter Sessions, and it being alleged that no order had been made bringing the indictment into the oyer. Section 1 of the Criminal Procedure act (*Pamph. L.* 1898, *p.* 866), after shortly defining the power and jurisdiction of the Court of Quarter Sessions in and for the several counties, contains a proviso that indictments for treason and murder, although found in that court, shall be tried in the Supreme Court or Court of Oyer and Terminer, and for that purpose the Court of Quarter Sessions shall cause such indictments to be delivered to the Supreme Court or the Court of Oyer and Terminer. Section 3 of the same act prescribes the constitution, powers and jurisdiction of the Court of Oyer and Terminer in each county, and among other things provides that no session of this court shall be held without the presence of

a justice of the Supreme Court except in counties having three hundred thousand inhabitants, in which counties, in the absence of a justice of the Supreme Court, the judge of the Court of Common Pleas, sitting alone, is permitted to hold the Court of Oyer and Terminer. Section 6 provides that in any county in which the judge of the Court of Common Pleas sitting alone cannot, in the absence of the justice of the Supreme Court, hold the Court of Oyer and Terminer (Passaic county is such a county), if a justice of the Supreme Court shall not be present when the grand jury desires to present an indictment, the Court of Quarter Sessions may receive such indictment, and may discharge the grand jury the same as the Court of Oyer and Terminer might do if the justice of the Supreme Court were personally present; "and all indictments so received which are not triable in the Courts of Quarter Sessions shall be delivered by said courts to the Courts of Oyer and Terminer in their respective counties."

The record before us sets forth that at a Court of Quarter Sessions held at Paterson, in and for the county of Passaic, on October 1st, 1909, being the day on which the grand jury desired to present bills, no justice of the Supreme Court being present, the grand jury presented the indictment in question to the Court of Quarter Sessions; that this court received the indictment, and did thereupon order that the same should be delivered to the Court of Oyer and Terminer for trial. The record further shows that all subsequent proceedings were in the oyer; that the accused was brought to the bar of that court and there pleaded to the indictment, and afterwards was there put on trial, convicted and sentenced. Nothing to the contrary appears in the bill of exceptions.

The contention of counsel that "there is no record of any such order having been made"—referring to the order transferring the indictment to the oyer—is thus shown to be contradicted by the record itself, which clearly shows that such an order was made, and that it was complied with.

The next point urged is that the trial court erred in admitting in evidence a confession made by the prisoner to the prosecutor's detective. At the time of this confession the

prisoner was under arrest on a charge of assault, the victim of the assault being at that time still alive. It is argued that "the prisoner having been arrested on a charge of assault, statements made by him were not admissible on his trial for murder." No reason is given for this insistment, and we believe it to be unsupported either by reason or authority.

The next point relates to the definition of "reasonable doubt" employed by the trial justice in his instructions to the jury. The learned justice, having stated that the law presumes the killing of a human being to be murder in the second degree unless the state by evidence satisfies the jury that it is murder in the first degree, and that therefore the state is required to prove beyond a reasonable doubt that the defendant took a human life willfully, with premeditation and deliberation, and that if this was not so proved the benefit of the doubt must be given to the defendant, and he could only be found guilty of murder in the second degree, or of manslaughter, thereupon employed the phrase that is the subject of the present criticism, stating: "If you have a doubt in your minds upon this evidence so presented, a reasonable doubt as the law expresses it, a doubt which by some of our law writers has been described as the want of an abiding conviction of his guilt, a conviction which shall rest with you all the days of your life, however long you may live, then you have a reasonable doubt, and if you have a reasonable doubt the benefit of it must be given under the tender mercies of the law to the defendant, and he cannot be convicted of murder in the first degree."

The term "reasonable doubt" has not in this state been authoritatively defined as "the want of an abiding conviction of guilt." That phrase was employed by Chief Justice Shaw in his charge to the jury in the *Webster Case,* 5 *Cush.* 295, 320. This court has not as yet approved, and it is not at present called upon to approve, the use of this—indeed, of any—paraphrase of the term "reasonable doubt." Nor are we prepared to approve of a definition of "abiding conviction" as a "conviction which shall rest with you all the days of your life, however long you may live." "Abiding conviction," as used by

Chief Justice Shaw, means no more than *settled* conviction. But we are entirely clear—and we need go no further for the decision of the present case—that whatever criticism may be brought against the charge of the trial justice in this regard merely tends to show that the instruction was more favorable to the defendant than he was entitled to expect. There is no ground for reversal here.

The next objections raised by counsel for the plaintiff in error have reference to certain comments by the trial justice upon the evidence, and furnish no ground for reversal, or even of reasonable criticism from the standpoint of the defendant.

Next it is argued that the trial justice erred in charging the jury: "That when the defendant took that loaded rifle he intended to do bodily harm to somebody." The following extract from the charge as delivered contains the phrase to which this criticism is directed: "When a man takes into his possession a loaded rifle, or a loaded pistol, and aims it at another, particularly when he is in close proximity to the other, the law presumes that he knows what he is doing; the law presumes that he is conscious of the probable results of his own acts. In other words, the law charges him with the possession of common sense, and the law will suppose in this case that when he took that loaded rifle and pursued those people up the road with it, that he intended to do bodily harm to somebody. Whether he intended to kill these people is a question for you to determine."

In order to fully understand the situation referred to, it should be stated that the persons pursued were several defenceless women, one of whom was Mrs. Guarino, wife of the defendant's employer. The others were near relations of her's, who were visiting her home at the time. The pursuit ended only when Mrs. Guarino received a mortal wound from defendant's gun. The Guarino home seems to have been a small place in the country. Defendant had for some years been employed there as a man-of-all-work. On the day in question, and not long before the shooting, he had been dismissed by Mrs. Guarino upon the complaint of a servant girl with whom

he had had some disputes. Mr. Guarino was absent from home at the time. While Mrs. Guarino and her daughter, two sisters and a niece, together with the servant girl, were upon or about the premises, unprotected by the presence of any other man, the defendant procured a loaded revolver from the house, went upon the lawn where some of the women were taking supper, fired at and wounded the servant girl, and either shot at or attempted to shoot at Mrs. Guarino. The women, frightened, fled from the premises, some of them (including the deceased) running along the public road towards a neighbor's house. Defendant returned to the Guarino house and procured a gun, loaded it, pursued the women a few hundred feet along the road, overtook Mrs. Guarino and shot her in the back, at a distance of about ten feet, inflicting the wound from which she not long afterwards died.

The killing is admitted, and it is not claimed that the defendant was insane, nor that there was anything in the evidence to suggest a justification, excuse, or even a palliation.

We have, therefore, the case of a man of mature years, and, so far as appears, of sound mind, pursuing fleeing and defenceless women with a loaded gun and discharging it at one of them, with the result of inflicting a serious and fatal wound.

In *State* v. *Zellers* (1824), 2 *Halst.* 220, 243, Chief Justice Kirkpatrick charged the jury that: "The law presumes all homicides to be committed with malice aforethought, and of course amounting to murder, until the contrary appears from circumstances of alleviation, excuse or justification. And it is incumbent upon the prisoner to make out such circumstances to the satisfaction of the jury, unless they arise out of the evidence produced against him." A similar instruction upon this topic was given by Mr. Justice Drake in *State* v. *Guild,* 5 *Id.* 163, 174. And the doctrine is now entirely settled in this state (*Brown* v. *State,* 33 *Vroom* 666, 704, 711), that upon a charge of murder, where the fact of killing is first made to appear, the law presumes it to be malicious until the contrary appears, so that it is incumbent upon the defendant to adduce evidence of the facts and circumstances from which justification, excuse or extenuation may arise,

unless such facts or circumstances appear from the evidence introduced against him.

Malice, in the law, is manifested by the intentional doing of a wrongful act to the injury of another, without just cause or excuse. *King* v. *Patterson,* 20 *Vroom* 417; *McFadden* v. *Lane,* 42 *Id.* 624, 630; *Brennan* v. *United Hatters,* 44 *Id.* 729, 744. In the law of homicide it may mean either an intent to do serious bodily harm, or an intent to take life. *Wilson* v. *State,* 31 *Id.* 171, 175. Where one human being kills another, it is not to be presumed without evidence that the person committed the act unconsciously, or accidentally, or while insane. And when the killing is done by the use of a deadly weapon—an instrument that, as used, may produce either death, or at least serious bodily injury—the presumption, until the contrary appears, is that at least serious bodily injury was intended.

Whether there is a presumed intent to take life, is a question mooted but not decided in *State* v. *Maioni,* 49 *Vroom* 339, 344.

The learned justice, in that part of his charge now under consideration, did not state that the intent to do bodily harm was *conclusively* presumed under the circumstances alluded to by him. It is true that he omitted to say that the presumption was subject to be rebutted by facts or circumstances indicating the absence of such intent; perhaps it did not at the moment occur to him that, in the case he was dealing with, it could be reasonably claimed that there was an absence of a purpose on defendant's part to at least do bodily harm to some member of the party of fleeing women.

But other parts of the charge show that the justice did not intend to exclude from the jury's consideration the question whether the presumption of a purpose to do bodily harm had been rebutted, for he not only submitted in general terms the question of the intent with which the act was done, but the question whether the defendant, if not proven to be guilty of murder in the first degree, was guilty of murder in the second degree, or of manslaughter, at the same time instructing them (pursuant, indeed, to the defendant's own request) that "the

general presumption of law is that all murders are of the second degree, and the burden is on the state to prove beyond a reasonable doubt that the killing was deliberate and premeditated."

Finally, error is assigned because of the refusal of the trial judge to charge, as requested by counsel for the defendant, the following propositions:

"1. In case of doubt, good character should turn the scale in favor of the defendant.

"2. Good character of the defendant is of itself a sufficient fact from which a reasonable doubt of guilt may arise, which of itself is a factor to determine the degree of guilt."

Counsel for the plaintiff in error seems to think that, in refusing these requests, the learned trial justice ran counter to the decision of our Supreme Court in *Baker* v. *State,* 24 *Vroom* 45, where, in reversing a conviction because of an instruction to the jury that in effect required the jury to disregard the evidence of the defendant's good character, unless the fact of guilt aside from that was in doubt, Mr. Justice Dixon, speaking for the court, said: "It is the right of a person charged with crime to have all the relevant testimony, including that relating to his good character or reputation, considered by the jury in every case, and if, on such consideration, there exist reasonable doubt of his guilt, even though that doubt be engendered merely by his previous good repute, he is entitled to an acquittal."

But in the case before us the learned trial justice did not at all instruct the jury to ignore the evidence of good character. He merely refused to tell them that in case of doubt good character should turn the scale, and that good character is of itself a sufficient fact from which a reasonable doubt may arise. Whether it ought to turn the scale in favor of the defendant, and whether it is a sufficient circumstance to create a reasonable doubt, are peculiarly for the decision of the jury. The requested instructions were not designed to enable the jury to apply any stated principle of law, but were contrived to draw from the court a recommendation as to the weight

that should be given to a certain part of the evidence. While it would be within the range of the discretion of the trial judge to make such a recommendation, if he deemed that the state of the evidence rendered it proper for him to do so, it was equally within his discretion to refuse. And such refusal is no ground for reversal.

The judgment under review should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GAR-RISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, CONGDON, JJ. 14.

*For reversal*—None.