[No. C053995. Third Dist. Mar. 24, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
RANDY DEAN PIERCE, Defendant and Appellant.

## Counsel

Steven Schorr, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Carlos A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**DAVIS, J.**[*]—A jury convicted defendant Randy Dean Pierce of second degree murder (Pen. Code, § 187, subd. (a)) and the court sentenced him to prison for 15 years to life.

During closing arguments, counsel for the prosecution and for defendant spoke to the jury concerning the meaning of the phrase "an abiding conviction that the charge is true" as that phrase appears in CALCRIM No. 220, California's instruction regarding proof beyond a reasonable doubt. Defendant contends that, through a combination of the court's limitation on defendant's argument and the argument of the prosecutor, the jury was misled as to the requirement of "permanen[cy]" as it relates to "an abiding conviction." Because we find that there is no reasonable likelihood that the jury was

---

[*]Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

misled or otherwise did not have an adequate understanding of the prosecution's burden of proof, we affirm the judgment.

DISCUSSION

*Proof Beyond a Reasonable Doubt*

Given the issues involved in this appeal, it is unnecessary to detail the facts. Suffice it to say that defendant was convicted of murder after he ran over his supposed friend with a truck. At trial, the following exchange took place during defendant's closing argument:

"[Defense counsel]: And beyond a reasonable doubt, what does that mean? That means that you have to have proof that leaves you with an abiding conviction that something is true. It is a permanent sort of a belief. It is not something if you were to find him guilty of first degree murder and wake up the next day and think to yourself, man, I hope that I was right, that's not an abiding conviction. You have to be so convinced that it is a permanent decision for you.

"[Prosecutor]: Objection. Misstates the law.

"[The Court]: Please restate the law.

"[Defense Counsel]: That is. It is an abiding—

"[The Court]: I'm not going to argue with you.

"[Defense Counsel]: Okay. It does not mean it is more likely than not he's guilty. It does not mean that he is probably guilty, it does not mean that you think he's guilty, it has to mean that you are convinced beyond a reasonable doubt that it is true."

During rebuttal, the prosecutor stated: "Defense counsel talked about the instruction for beyond a reasonable doubt, and I want to read that one to you. She said you have to be comfortable with it tomorrow, think about it tomorrow, and that's when I objected about misstating the law. Listen for anything about tomorrow, the future, next week, or even ten minutes after your verdict in this instruction, because you're not going to hear it."

The prosecutor then read from the reasonable doubt instruction the trial court gave here, CALCRIM No. 220, and made the following statement: "All it says is proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. It doesn't say tomorrow, next week,

next hour, you know, when you're deliberating, when you've made your decision, that's when it counts. There's no legal requirement of and we'll come back in a week and make sure you're all good with this."

Defendant made no objection to the prosecutor's statements.

As noted, defendant claims the combination of the trial court effectively sustaining the objection to his closing argument and the prosecutor's statements gave the jury an inaccurate definition of the standard of proof in a criminal case. He argues that the jury was misled into thinking that the concept of "an abiding conviction" did not require a sense of "permanen[ce]" of a juror's belief in the truth of the charge.

### A.  *The Trial Court's "Ruling"*

Defendant points first to the trial court's response to the prosecutor's objection to defense counsel's argument that "abiding" means "permanent" ("Please restate the law") and contends the trial court impliedly sustained the objection and thereby erroneously foreclosed this defense argument. We do not think the trial court impliedly sustained the prosecutor's objection, but instead properly directed defense counsel to restate the law as set out in the jury instructions.

By failing to say "sustained" or "overruled" in response to the prosecutor's objection that defense counsel's argument misstated the law, the trial court can be seen to have wisely refused to wade into the issue of whether defense counsel's attempt to further define the word "abiding" was accurate or not. It is common, where one attorney objects to the other attorney's argument as misstating the law, for a trial court to simply direct the jury to the jury instructions, without actually ruling on the objection. That is effectively what the trial court did here by telling defense counsel to "restate the law." By doing this, the trial court implicitly directed defense counsel to the instructions and reminded the jurors of those instructions (by having defense counsel "restate the law" from those instructions; in fact, the prosecutor picked up on this and read to the jury the trial court's instruction on reasonable doubt). Thus, the trial court did not err when it simply directed defense counsel to "restate the law"—i.e., to return to the applicable jury instruction (on reasonable doubt), which, as we shall see, was a proper statement of the law. Nor did the trial court mislead the jury; as we shall also see, the meaning of the word "abiding" in that instruction is self-evident and needs no further elaboration.

### B. *The Prosecutor's Statements to the Jury*

Turning to the prosecutor's challenged statements to the jury, the People initially argue that defendant has forfeited this contention on appeal by failing to object in the trial court to the statements of which he now complains.

It is the general rule that a defendant cannot complain on appeal of prosecutorial misconduct—in this case, misleading the jury on the law—unless the defendant objected at trial and requested an admonishment from the court to the jury to disregard the impropriety. (*People v. Samayoa* (1997) 15 Cal.4th 795, 841 [64 Cal.Rptr.2d 400, 938 P.2d 2] (*Samayoa*).) As noted, defendant did not object to the prosecutor's argument.

Even if we assume for the sake of argument, however, that the issue of the prosecutor's statements has been preserved for appellate review, this issue ultimately comes down to whether there is a reasonable likelihood that the jury misunderstood the concept of "reasonable doubt" based on those statements. This is because when a claim of prosecutorial misconduct "focuses upon comments made by the prosecutor before the jury, the question [of the comments' prejudicial impact] is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*Samayoa, supra,* 15 Cal.4th at p. 841; see *People v. Ayala* (2000) 23 Cal.4th 225, 284 [96 Cal.Rptr.2d 682, 1 P.3d 3].) We conclude there is no reasonable likelihood that the jury here so construed or applied any of the prosecutor's remarks relating to "an abiding conviction."

Defendant's challenge here involving "abiding" and "permanen[ce]" centers on the following statements the prosecutor made to the jury regarding the reasonable doubt instruction: "Listen for anything about tomorrow, the future, next week, or even ten minutes after your verdict in this instruction, because you're not going to hear it"; "It doesn't say tomorrow, next week, next hour, you know, when you're deliberating, when you've made your decision, that's when it counts."

We first observe that this is not a case where the trial court gave instructions on reasonable doubt that were in error. The instructions on reasonable doubt tracked exactly CALCRIM No. 220 and were a correct statement of the law. In fact, in her challenged statements to the jury, the prosecutor herself directed the jurors to this instruction and read it to them.

In instructing with CALCRIM No. 220, the trial court stated in pertinent part: "Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all

possible doubt because everything in life is open to some possible or imaginary doubt." We have also previously seen how the trial court in effect directed the jury to this reasonable doubt instruction through its comment to defense counsel to "[p]lease restate the law."

██  Penal Code section 1096, which furnishes the basis for CALCRIM No. 220, states as relevant here: "Reasonable doubt is defined as follows: 'It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.' " And Penal Code section 1096a says: "In charging a jury, the court may read to the jury Section 1096, and no further instruction on the subject of the presumption of innocence or defining reasonable doubt need be given."

The United States Supreme Court and the California Supreme Court, respectively, have described "an abiding conviction" as one that is "settled and fixed" (*Hopt v. Utah* (1887) 120 U.S. 430, 439 [30 L.Ed. 708, 7 S.Ct. 614]) and one that is "lasting [and] permanent" (*People v. Brigham* (1979) 25 Cal.3d 283, 290 [157 Cal.Rptr. 905, 599 P.2d 100]). These descriptions of "abiding," though, are self-evident and an unnecessary elaboration of a readily understood term. The phrase "abiding conviction" does not require definition.[1]

██  The prosecutor's challenged statements concerning "an abiding conviction" were not only brief, but they evoked a certain "permanen[ce]" in that each juror's conviction that the charge was true had to be "permanent" in that, considering the law and the facts presented, that conviction would "abide," that is, would not change, through the end of the trial when the jury rendered its verdict in open court. The possibility that after the conclusion of the case one or more jurors might change their minds after learning something new is irrelevant. That speculative possibility does not lessen or otherwise implicate the degree of certainty required for a verdict. This is because such a change of mind is dependent on a different context; a context in which a juror has received something new that influences his or her opinion. We also note that the only question the jury asked during deliberations related to a review of certain evidence; the jury did not ask any questions concerning the instruction on reasonable doubt or the meaning of the concept of an abiding conviction. Thus, there is no reasonable likelihood that the prosecutor's brief remarks led the jury to think that "an abiding

---

[1] For example, "permanent" is defined by the Oxford English Dictionary as "[c]ontinuing or designed to continue indefinitely without change; abiding, lasting, enduring; persistent. Opposed to *temporary*." (7 Oxford English Dict. (1978) p. 710, col. 2.)

conviction" of the truth of the charge was something less than the self-evident nature of "abiding" as "settled and fixed" and "lasting [and] permanent." The record does not establish a reversible error.

■  Having found no prejudicial error in considering individually the challenged trial court's "ruling" or the prosecutor's statements, we find no prejudicial error in their combination.

### DISPOSITION

The judgment is affirmed.

Robie, J., concurred.

**HULL, Acting P. J.,** Concurring.—I concur in the result.

During closing arguments in this matter, counsel for the prosecution and for defendant spoke to the jury concerning their views on the meaning of the phrase "an abiding conviction that the charge is true" as that phrase appears in CALCRIM No. 220, California's instruction regarding proof beyond a reasonable doubt. Defendant contends that, through a combination of the court's limitation on defendant's argument and the argument of the prosecutor, the jury was misled as to the requirement of "permanen[cy]" as it relates to "an abiding conviction."

Specifically, the following exchange took place during defendant's closing argument:

"[Defense counsel]: And beyond a reasonable doubt, what does that mean? That means that you have to have proof that leaves you with an abiding conviction that something is true. It is a permanent sort of a belief. It is not something if you were to find him guilty of first degree murder and wake up the next day and think to yourself, man, I hope that I was right, that's not an abiding conviction. You have to be so convinced that it is a permanent decision for you.

"[Prosecutor]: Objection. Misstates the law.

"[The Court]: Please restate the law.

"[Defense Counsel]: That is. It is an abiding—

"[The Court]: I'm not going to argue with you.

"[Defense Counsel]: Okay. It does not mean it is more likely than not he's guilty. It does not mean that he is probably guilty, it does not mean that you think he's guilty, it has to mean that you are convinced beyond a reasonable doubt that it is true."

Then, during rebuttal, the prosecutor said: "Defense counsel talked about the instruction for beyond a reasonable doubt, and I want to read that one to you. She said you have to be comfortable with it tomorrow, think about it tomorrow, and that's when I objected about misstating the law. Listen for anything about tomorrow, the future, next week, or even ten minutes after your verdict in this instruction, because you're not going to hear it."

The prosecutor then read from the reasonable doubt instruction, Judicial Council of California Criminal Jury Instructions (2006–2007) CALCRIM No. 220 and made the following statement: "All it says is proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. It doesn't say tomorrow, next week, next hour, you know, when you're deliberating, when you've made your decision, that's when it counts. There's no legal requirement of and we'll come back in a week and make sure you're all good with this."

Defendant made no objection to the prosecutor's argument and the trial court made no further comment on the issue.

As noted earlier, defendant claims the combination of the court effectively sustaining the objection to his closing argument and the prosecutor's statements gave the jury an inaccurate definition of the standard of proof in a criminal case. He argues that the jury was misled into thinking that the concept of "an abiding conviction" did not require a sense of permanence of a juror's belief in truth of the charge.

Just over 100 years ago, the Supreme Court of the State of Montana considered the case of *State v. De Lea* (1908) 36 Mont. 531 [93 P. 814] (*De Lea*), a decision that dealt in part with the definition of reasonable doubt. The court found no error after the trial court instructed the jury using the definition of reasonable doubt offered by Chief Justice Shaw in *Commonwealth v. Webster* (1850) 59 Mass. (5 Cush.) 295. According to Chief Justice Shaw, "reasonable doubt" could be defined as follows: "It is not mere possible doubt; because every thing relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge." (*Id.* at p. 320.)

Concurring in the result in *De Lea*, Justice Smith wrote: "I am inclined to think, despite the fact that the definition of 'reasonable doubt' . . . discussed [in the majority opinion] has been employed by the courts of this and other states for so many years, and has been approved, that it is not too late to discourage the practice of giving it to juries in criminal cases. It seems that the English language is inadequate to satisfactorily define the phrase 'reasonable doubt.' Some courts are not satisfied with the definition approved by this court. How, then, shall a jury of laymen be guided or aided by it? Perhaps the reason why the words are difficult of explanation is because they are so ordinary and simple. At any rate, the definition, although the best that has ever been given and perhaps the best that can be framed, is so complicated and involved that it is more difficult to understand than are the words the meaning of which the courts have attempted to explain.

"I do not think the words 'reasonable doubt' require explanation. I believe that any juror who has not the mental capacity to understand the words themselves could not possibly comprehend the definition given to them by the courts. How can it be said that a juror could not understand what is meant by a 'reasonable doubt' but would know the meaning of the words 'an abiding conviction to a moral certainty,' used in the definition? I think any intelligent juror will appreciate the scope of his duty when told that, before he is justified in arriving at a verdict of guilty, he must be satisfied of the guilt of the defendant from the evidence, beyond a reasonable doubt; and that no other or further charge should be given on this subject. [¶] . . . [¶]

". . . I undertake to say that every honest juror who, upon the whole evidence, has in his heart a reasonable doubt of the defendant's guilt, will act upon it, without analysis or application of definition. He will unconsciously heed it without seeking to explain it. When his mind harbors a doubt that prevents his conscientiously voting guilty, that doubt will be expressed in a vote of acquittal.

"I maintain, therefore, that we should give our trial judges credit for the integrity, learning, discretion and consideration for their oaths of office that they in reality possess, and that our jurors should be treated as men of intelligence, and not as children." (*De Lea, supra,* 36 Mont. at pp. 542–545.)

Justice Smith's point of view regarding the wisdom of trying to define "reasonable doubt" is not unknown in California. In 1979, Justice Mosk, concurring in *People v. Brigham* (1979) 25 Cal.3d 283 [157 Cal.Rptr. 905, 599 P.2d 100] (*Brigham*), presented an extensive survey of courts and commentators who were of the opinion that efforts to define "reasonable doubt" presented more difficulties than they resolved. Justice Mosk wrote: "Happily there is another alternative, a solution adopted by fully half of the states of

the Union and long advocated by leading scholars. These authorities recognize that all attempts to define the phrase 'beyond a reasonable doubt' are at once futile and unnecessary. They are futile because, as we have seen, the definition is more complicated than the phrase itself and results in confusing rather than enlightening the jury; and they are unnecessary because 'beyond a reasonable doubt' is not a technical legal term requiring learned explanation, but a phrase of common meaning and usage that is known to and understood by the average juror. From these premises both courts and Legislatures have concluded that in criminal cases the jury should simply be instructed on the presumption of innocence and the prosecution's burden of proving guilt beyond a reasonable doubt, with no effort being made to define the latter phrase." (*Brigham, supra,* 25 Cal.3d at p. 308 (conc. opn. of Mosk, J.).)

Urging the Legislature adopt this solution and amend Penal Code section 1096 accordingly, Justice Mosk was of the opinion that if it did not do so, "juries in all California criminal trials will continue to be mystified at best and misled at worst by hearing the concept of reasonable doubt defined in the archaic idiom of [section 1096]. 'But this, now hallowed, language produces the same sheep like acceptance as the "Emperor's New Clothes." Judges awesomely intone the ponderous gibberish, as lawyers hypnotized into believing they understand the fatuity listen respectfully, while jurors, noticing His Honor's serious mien and the lawyers' sage expression, mimic the exampled air of grave comprehension. Thus, the linguistic parade begun in 1850 continues through today without so much as a smile from the marchers.' (Fn. omitted; Sinetar, [*A Belated Look at CALJIC* (1968) 43 State Bar J. 546,] 551–552.)

"Whether parade or charade, it is time the pretense was ended and plain speaking restored to the courtroom. Respect for the conscientious men and women who serve on our juries to the best of their ability demands no less." (*Brigham, supra,* 25 Cal.3d at pp. 315–316 (conc. opn. of Mosk, J.); see also *People v. Freeman* (1994) 8 Cal.4th 450, 526–531 [34 Cal.Rptr.2d 558, 882 P.2d 249] (conc. opn. of George, J.).)

The above opinions notwithstanding, it remains the law in California that the jury in a criminal trial must be instructed on the meaning of "proof beyond a reasonable doubt."

The court instructed the jury with CALCRIM No. 220, which, in pertinent part, states: "Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt."

Penal Code section 1096, as relevant to the issue before us, provides: "Reasonable doubt is defined as follows: 'It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.' " And Penal Code section 1096a says: "In charging a jury, the court may read to the jury Section 1096, and no further instruction on the subject of the presumption of innocence or defining reasonable doubt need be given."

As one can see, the Legislature chose to define reasonable doubt by telling the jury what a reasonable doubt is, that is, a mental state whereby the jurors cannot say they feel an abiding conviction of the truth of the charge. CALCRIM No. 220 approaches the matter differently, telling the jurors what *proof beyond a reasonable doubt* is, that is, proof that leaves the jurors with an abiding conviction that the charge is true. But both enlist the concept of "an abiding conviction" and, either way, the concept of "an abiding conviction" is a critical component of California's definition of proof beyond a reasonable doubt.

California trial (and appellate) judges know that, at least initially, no further instruction on the subject of reasonable doubt need be given beyond that set forth above (Pen. Code, § 1096a), that "individual courts should not . . . modify the standard instruction" (*People v. Freeman, supra,* 8 Cal.4th at p. 504), and that to further instruct on the concept of a reasonable doubt is "perilous" (*id.* at p. 504). In 2003, our Supreme Court rejected an argument by counsel that CALJIC No. 2.90, California's then current instruction on reasonable doubt, was " 'hopelessly confusing.' " (*People v. Heard* (2003) 31 Cal.4th 946, 980 [4 Cal.Rptr.3d 131, 75 P.3d 53].) And the Court of Appeal in 2007, in light of an "impressive and controlling array of legal authority," rejected as "meritless" a contention that "a clarifying instruction defining 'abiding conviction' was required because 'the phrase "abiding conviction" is . . . so archaic and generally disused, it is likely to be beyond the understanding of the average juror.' " (*People v. Campos* (2007) 156 Cal.App.4th 1228, 1238–1239 [67 Cal.Rptr.3d 904].)

Even so, an exchange during closing argument such as the one we consider here, is a not uncommon example of that which may, depending on the circumstances, at some point require a trial judge to further explain to the jury that portion of the definition of reasonable doubt that requires each juror to hold an abiding conviction that the charge is true. In some circumstances, the jurors may come to question why a "readily understood term" (maj. opn., *ante,* at p. 573) has, according to the attorneys, two very different meanings.

Defendants' attorneys, understandably, want the jury to think that an "abiding" conviction is one that the jurors will hold forever. Prosecutors, understandably, resist that argument and often argue, more or less, that it is a conviction that will last through the conclusion of the trial.

California appellate decisions have not defined the phrase "an abiding conviction." But on this issue, we do have some guidance.

In *Victor v. Nebraska* (1994) 511 U.S. 1 [127 L.Ed.2d 583, 114 S.Ct. 1239] (*Victor*), the United States Supreme Court considered the constitutional adequacy of an earlier definition of reasonable doubt then in use in California. That instruction defined "reasonable doubt" as follows: " 'It is *not a mere possible doubt*; because everything relating to human affairs, and *depending on moral evidence*, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, *to a moral certainty*, of the truth of the charge.' " (*Id.* at p. 7.)

In *Victor*, the defendant contended in part that use of the phrase "to a moral certainty" violated the due process clause of the United States Constitution. The court noted that the question before it was whether there was a reasonable likelihood that the instruction allowed for a conviction based on proof that did not meet the constitutional standard of proof beyond a reasonable doubt. (*Victor, supra,* 511 U.S. at p. 6.) While observing that proof beyond a reasonable doubt is "an ancient and honored aspect of our criminal justice system" (*id.* at p. 5), the court recognized that it is a standard that "defies easy explication" (*ibid.*). Ultimately, the court decided that "[a]lthough . . . moral certainty is ambiguous in the abstract" the balance of the instruction gave content to the phrase because the jurors were told that they had to have an abiding conviction, to a moral certainty, of the truth of the charge. (*Id.* at p. 14.) The court held that "[a]n instruction cast in terms of an abiding conviction as to guilt, without reference to moral certainty, correctly states the government's burden of proof." (*Id.* at pp. 14–15, citing *Hopt v. Utah* (1887) 120 U.S. 430, 439 [30 L.Ed. 708, 7 S.Ct. 614] (*Hopt*).)

In *Hopt*, the United States Supreme Court considered an instruction on reasonable doubt given in a murder case in a state court in Utah. The instruction read, in part: " 'The court further charges you that a reasonable doubt is a doubt based on reason, and which is reasonable in view of all the evidence. And if, after an impartial comparison and consideration of all the evidence, you can candidly say that you are not satisfied of the defendant's guilt, you have a reasonable doubt; but if, after such impartial comparison and consideration of all the evidence, you can truthfully say that you have an

abiding conviction of the defendant's guilt, such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonable doubt.' " (*Hopt, supra,* 120 U.S. at p. 439.) Noting that "an instruction to the jury that they should be satisfied of the defendant's guilt beyond a reasonable doubt, had often been held sufficient, without further explanation" (*id.* at p. 440) and that the concept of reasonable doubt "may be, and often is, rendered obscure by attempts at definition, which serve to create doubts instead of removing them" (*id.* at pp. 440–441), the court observed in passing that the word " 'abiding' " in the instruction had "the signification of settled and fixed, a conviction which may follow a careful examination and comparison of the whole evidence" (*id.* at p. 439).

The California Supreme Court addressed instructions on reasonable doubt in *Brigham, supra,* 25 Cal.3d 283. In *Brigham,* the trial court instructed the jury using former CALJIC No. 22 (rev.) which read in pertinent part, "The law does not require demonstration or that degree of proof which, excluding all possibility of error, produces absolute certainty, for such degree of proof is rarely possible. Moral certainty only is required, which is that degree of proof which produces conviction . . ." and CALJIC No. 2.90 which read in pertinent part, "Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge." (See *Brigham,* at pp. 289–290.)

Our high court held that former CALJIC No. 22 (rev.) should not thereafter be used by the trial courts. "Former CALJIC No. 22 (rev.) has some serious flaws. It defines 'moral certainty' as 'that degree of proof which produces conviction in an unprejudiced mind.' The phrase which is suspect is 'that degree of proof which produces conviction.' CALJIC No. 2.90 speaks of an 'abiding conviction'; former CALJIC No. 22 (rev.) speaks only of 'conviction.' *The lasting, permanent nature of the conviction connoted by 'abiding' is missing and the juror is not informed as to how strongly and how deeply his conviction must be held.*" (*Brigham, supra,* 25 Cal.3d at pp. 290–291, italics added.)

In *People v. Castro* (1945) 68 Cal.App.2d 491 [157 P.2d 25] (*Castro*), the Court of Appeal considered a variation of the definition of reasonable doubt found in Penal Code section 1096 and quoted above, but one that required an " 'abiding conviction' " of the truth of the charge. (*Castro,* at p. 500, italics omitted.) In finding the jury had not been misled by the trial court's instruction, the court found that an " '[a]biding conviction' is the equivalent

of 'settled conviction.' (*State* v. *Silverio*, 79 N.J.L. 482 [76 A. 1069].) It is used in the sense of 'convince.' (*State* v. *Leo*, 80 N.J.L. 21 [77 A. 523]; 36 Words and Phrases (Perm. ed.), p. 298.)" (*Castro*, at p. 500.)

Thus, the United States Supreme Court has described "an abiding conviction" as one that is "settled and fixed" (*Hopt, supra,* 120 U.S. at p. 439), the California Supreme Court has described it as one that is "lasting [and] permanent" (*Brigham, supra,* 25 Cal.3d at p. 290), and the California Court of Appeal has described an " '[a]biding conviction' " as a " 'settled conviction' " (*Castro, supra,* 68 Cal.App.2d at p. 500). But those explanations beg the question on the issue before us: settled and fixed for how long; lasting and permanent for how long, in the eyes of the law? That is, do those phrases connote duration or do they refer to the strength, depth and certainty of the conviction? The answer, of course, is *both.*

Like the majority, I note that the Oxford English Dictionary defines "permanent" as "[c]ontinuing or designed to continue indefinitely without change; abiding, enduring, lasting; enduring; persistent. Opposed to *temporary.*" (7 Oxford English Dict. (1978) p. 710, col. 2.)

The Merriam-Webster Online Dictionary defines "permanent" as "continuing or enduring without fundamental or marked change: STABLE." (Merriam-Webster Online <http://www.merriam-webster.com> [as of Mar. 24, 2009], "permanent" No. 1.) It would then appear that when our high court in *Brigham,* in speaking of the duration of the conviction, and consistent with other authorities, used the word "permanent" in the sense of stable, enduring, or lasting, it did not intend the word to mean "eternal" or necessarily lasting forever.

Thus in my view, the concept of an "abiding" conviction speaks to the strength, depth and certainty of that conviction and to its duration, but must take into account the natural possibility that a juror may learn something that relates to the case after the conclusion of the trial that changes that juror's view of it. Taking that possibility into account, I think a juror may say that he or she has an abiding conviction of the truth of the charge when, after fully considering the evidence presented during the course of the trial, the arguments of the attorneys, the instructions on the law provided by the trial judge and the points of view presented by fellow jurors during the course of the jury's deliberations, he or she is convinced beyond a reasonable doubt that the defendant is guilty of the charge and that this conviction will last, or "abide" for so long as that juror's knowledge of the case remains the same as it is at the close of trial.

Because, in my opinion, there is no reasonable likelihood that the prosecutor's remarks led the jury to think that "an abiding conviction" of the truth of

the charge was something less than a belief that was "settled and fixed" or "lasting and permanent" as those phrases are used in the criminal law, no reversible error appears on this record.

Appellant's petition for review by the Supreme Court was denied June 24, 2009, S172342.