Filed 4/22/15  P. v. Velyines CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>AUNDRE MARQUELL VELYINES et al.,<br><br>    Defendants and Appellants. | F067029<br><br>(Super. Ct. Nos. VCF272388A, VCF272388B & VCF238433)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Joseph A. Kalashian, Judge.

Michael Allen, under appointment by the Court of Appeal, for Defendant and Appellant Aundre Marquell Velyines.

Victoria H. Stafford, under appointment by the Court of Appeal, for Defendant and Appellant Ernest Deshawn McCormick.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Peter H. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

On December 17, 2012, defendants Aundre Marquell Velyines and Ernest Deshawn McCormick (collectively, defendants) were charged in connection with the robbery of Jourdaine Correia. Defendants were charged with one count of second degree robbery (count 1, Pen. Code,[1] § 211), and Velyines was charged with one count of assault with a deadly weapon (count 2; § 245, subd. (a)(1)). The information contained special allegations claiming that Velyines had personally used a firearm in connection with count 1 (§ 1192.7, subd. (c)(8)); that McCormick had committed count 1 while a principal was armed with a firearm (§ 12022, subd. (a)(1)); and that Velyines had used a car as a deadly weapon in count 2 (§ 969, subd. (f)). The information also alleged a prior prison conviction for Velyines (§ 667.5).

A jury found defendants guilty of second degree robbery but found the firearm enhancements not true. The jury also found Velyines guilty of assault with a deadly weapon and found true the allegation that he had personally used a car as a deadly weapon. Velyines admitted his prior prison conviction and was sentenced to an aggregate term of six years in prison. McCormick was sentenced to a term of three years in prison, and both defendants were held jointly and severally liable for victim restitution in the amount of $3,606.18.

On appeal, defendants argue that the trial court erred by (1) failing to issue a unanimity instruction to the jury, (2) misdirecting the jury on the definition of reasonable doubt, and (3) ordering defendants to pay restitution for the victim's relocation expenses. We find none of these arguments persuasive and affirm the judgments.

### FACTS

In the early morning hours of July 27, 2012, Jourdaine Correia was driving a car containing Jalissa Johnson and Dominique Steele from Visalia to Hanford. Correia stopped in Visalia at a 7-11 convenience store on the corner of Mooney Boulevard and

---

[1]Unless otherwise specified, all statutory references are to the Penal Code.

Tulare Avenue to purchase cigarettes and, while she was parked, a Mercedes driven by Velyines, with McCormick in the passenger seat, pulled into the stall alongside Correia's car.

Upon observing the Mercedes, Johnson, who was in the passenger seat of Correia's car, immediately crawled over the center console and hid in the backseat. Johnson told Correia to drive away because Johnson's pimp was driving the Mercedes. Correia drove off, but defendants followed in the Mercedes. Correia attempted to elude them by driving through the city streets at speeds of up to 80 miles per hour, but the Mercedes maintained pursuit.

Correia then entered onto State Route 198, where she increased her speed to over 100 miles per hour, but Velyines continued to follow at a distance of only a few feet. Eventually, Correia felt a bump and heard a gunshot, at which time her left rear tire shredded and she lost control of her vehicle. Her car swerved into the oncoming lane of travel, spun, and came to rest along the opposite shoulder. Velyines stopped in front of Correia's car, where both he and McCormick exited and approached her car.

Correia attempted to exit her vehicle to talk to Velyines, but, before she could, Velyines grabbed Correia by the shirt and dragged her from the car. Velyines went inside the car and spoke to Johnson and Steele and removed numerous items, including the women's purses and cell phones, and put them in the Mercedes. At that point, Velyines told Correia that, "if [she] was going to hang out with bitches like that, [she] was going to die with bitches like that." Velyines then asked McCormick, "[w]hat are we going to do … [what] do you want to do now?" McCormick said, "[f]uck it … [l]et's just do it." Velyines then retrieved a firearm from the Mercedes and approached Correia. Upon seeing the weapon, Correia fled down the side of the highway, through a field, and into a private residence, where she contacted the police. Both defendants were apprehended the following day when they were observed standing outside of the Mercedes at a gas station.

## *DISCUSSION*

### I.     *The trial court was not required to issue a unanimity instruction*

First, Velyines contends that the trial court erred by failing to issue, sua sponte, a unanimity instruction to the jury on the count of assault with a deadly weapon after the jury had commenced deliberations.  Appellate counsel contends, and we agree, the court had no predeliberation duty to instruct on unanimity.  However, counsel further contends that, after a jury inquiry into what constitutes an assault, the court's duty arose.  We conclude there was no predeliberation duty to instruct on unanimity, nor did one arise thereafter.

> """""[I]t is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence.  [Citations.]  The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." [Citation.]'""" (*People v. Banks* (2014) 59 Cal.4th 1113, 1159).

Likewise, "[a] jury must agree unanimously the defendant is guilty of a *specific* crime." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.)  "Therefore … when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*Ibid*.)

Here, the evidence suggests one discrete crime:  that Velyines committed an assault with his car.  Further, the prosecutor made it clear during closing arguments that there was only one theory of assault, saying, "when we're talking about the assault with a deadly weapon, we're talking about when [Correia] said that Velyines hit the back of her car with his car when they were [on the freeway] .…"  Therefore, there was no need to issue a unanimity instruction, as there were not multiple, discrete instances of assault that the jury needed to decide among.

On appeal, however, Velyines claims that a unanimity instruction became necessary when, during jury deliberations, the jury asked the court, "[w]ith respect to the

4.

charge of Assault with a Deadly Weapon, do the People have to prove that the car was actually struck by the defendant or is it enough to only prove intent to commit bodily injury."[2] Though the trial court instructed the jury to refer to the relevant jury instructions for the elements of assault, Velyines argues that the jury's question introduced a separate theory of assault—that Velyines had intended to bump Correia's car but failed—and obligated the trial court to issue a unanimity instruction.

We are not so confident the jury's question was an attempt to posit a new, distinct theory of the crime, as opposed to a simple request to have the elements of assault clarified. However, even if the jury had the authority and inclination to put forward new theories of the case, unanimity instructions are not required when "the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was," as "the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty." (*People v. Russo*, *supra*, 25 Cal.4th at p. 1132.)

For example, "to convict a defendant of first degree murder, the jury must unanimously agree on guilt of a specific murder but need not agree on a theory of premeditation or felony murder [citation] .…" (*People v. Russo, supra,* 25 Cal.4th at p. 1133.) Closer to the point, "[i]f the evidence showed two different entries with burglarious intent, for example, one of a house on Elm Street on Tuesday and another of a house on Maple Street on Wednesday," a unanimity instruction would be required; "[i]f, however, the evidence showed a single entry, but possible uncertainty as to the exact burglarious intent, that uncertainty would involve only the theory of the case and not require the unanimity instruction." (*Id*. at pp. 1132-1133.)

---

[2]The jury later asked for the definition of assault and to hear Correia's testimony about the rate of speed she was driving but returned with a verdict before receiving answers from the trial court.

Here, there was only one alleged incident of assault:  Velyines's assaulting Correia with his car on the freeway.  Even if the jurors had multiple theories of how that assault was carried out, it was still a single, discrete criminal act and did not require a unanimity instruction.  This requirement of unanimity as to the criminal act "'is intended to eliminate the danger that the defendant will be convicted even though there is no single *offense* which all the jurors agree the defendant committed.'  [Citation.]"  (*People v. Russo, supra,* 25 Cal.4th at p. 1132, italics added.)  "'The [unanimity] instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count.'  [Citation.]"  (*Ibid.*)  Accordingly, Velyines's argument fails.

## II.     *The trial court properly instructed the jury on the burden of proof*

During closing arguments, the following exchange took place:

"[DEFENSE COUNSEL]:  Now, it was described to you that proof beyond a reasonable doubt is proof that leads you to an abiding conviction that the charge is true.  That sounds nice and flowery, and it's not that helpful to us.  The judge has to read what the state sends down.  The way I like to think about it, let's say you're deliberating.  You come to a verdict.  You go home and you're thinking about the case a little more, and the next day or so, and you say, you know, I'm not really sure about my verdict—

"[PROSECUTOR]:  Objection, misstates the law.  Reasonable doubt has to be here and now, not possible imaginary doubt the next day.

"THE COURT:  Sustained."

On appeal, both defendants contend the prosecutor's objection misstated the law, and the trial court's decision to sustain the objection thereby adopted the prosecutor's flawed definition and misdirected the jury.  We disagree.  "In determining the correctness of jury instructions, we consider the instructions as a whole.  [Citation.]  An instruction can only be found to be ambiguous or misleading if, in the context of the entire charge,

there is a reasonable likelihood that the jury misconstrued or misapplied its words. [Citation.]" (*People v. Campos* (2007) 156 Cal.App.4th 1228, 1237.)

As a preliminary matter, we note that the trial court correctly instructed the jury on the definition of reasonable doubt, using CALCRIM No. 220. Additionally, despite defendants' claims to the contrary, we do not find that the prosecutor's objection misstated the law. In fact, the prosecutor's reference to "possible" or "imaginary" doubt is lifted nearly verbatim from CALCRIM No. 220, which states "[t]he evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt."

Further, while defendants take particular umbrage at the prosecutor's statement that reasonable doubt must be "here and now," and not in the future, defendants' protests are without support. In *People v. Pierce* (2009) 172 Cal.App.4th 567, 570-571, a defendant raised a nearly identical argument, claiming the prosecutor misstated the burden of proof by informing the jury that, "[the reasonable doubt instruction] doesn't say tomorrow, next week, next hour, you know, when you're deliberating, when you've made your decision, that's when it counts." The Third District Court of Appeal rejected the defendant's argument, holding the following:

> "The prosecutor's challenged statements concerning 'an abiding conviction' were not only brief, but they evoked a certain 'permanen[ce]' in that each juror's conviction that the charge was true had to be 'permanent' in that, considering the law and the facts presented, that conviction would 'abide,' that is, would not change, through the end of the trial when the jury rendered its verdict in open court. The possibility that after the conclusion of the case one or more jurors might change their minds after learning something new is irrelevant. That speculative possibility does not lessen or otherwise implicate the degree of certainty required for a verdict. This is because such a change of mind is dependent on a different context; a context in which a juror has received something new that influences his or her opinion." (*People v. Pierce, supra,* 172 Cal.App.4th at p. 573.)

Here, as in *Pierce*, the prosecutor's words reflected the notion that the jury's conviction that a charge was true had to abide through the end of trial; his words were

7.

also an accurate statement of the law.  And, while defendants' claim that the prosecutor's lack of regard for future changes of heart "trivializes[s]" the burden of proof, "[t]he possibility that after the conclusion of the case one or more jurors might change their minds after learning something new is irrelevant … [and] does not lessen or otherwise implicate the degree of certainty required for a verdict."  (*People v. Pierce, supra,* 172 Cal.App.4th at p. 573.)  We conclude the trial court neither abused its discretion nor mislead the jury by sustaining the prosecutor's objection.  Defendants' argument fails.

### III.     *The trial court did not abuse its discretion by ordering restitution for Correia's relocation expenses*

Prior to trial, the prosecution informed the court that every time defendants' case was scheduled for trial or a preliminary hearing, Correia was faced with threats attempting to dissuade her from testifying.  Prior to sentencing, the Victim Compensation Board paid Correia $2,406.18.  At sentencing, the prosecutor stated that a third party had been convicted of witness intimidation against Correia in connection with her testimony in defendants' case, and Correia testified she had recently relocated a fourth time in an effort to avoid threats and harassment at a cost of approximately $2,000.  At the conclusion of sentencing, the trial court ordered defendants to be jointly and severally liable for restitution in the amount of $2,406.18 for the funds paid by the Victim Compensation Board, as well as for an additional $1,200.  Both defendants claim error.

Defendants assert they should not be held liable for the portion of the restitution award concerning Correia's relocation expenses as neither defendant directly engaged in the threatening behavior that prompted Correia to relocate.  We disagree.  An order of restitution is reviewed for an abuse of discretion.  (*People v. Jones* (2010) 187 Cal.App.4th 418, 423.)

Former section 1202.4, subdivision (a)(1), states that "'[i]t is the intent of the Legislature that a victim of crime who incurs *any* economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of

8.

that crime.'" (*People v. Jones, supra,* 187 Cal.App.4th at p. 422, italics added.) When determining whether an economic loss was the result of a defendant's criminal acts, courts consider both direct causation and proximate causation. (*Id.* at pp. 424-425.) Direct causation is present when, but for a defendant's criminal act, no loss would have occurred. (*Id.* at p. 425.) Proximate causation is present when the defendant's actions played a "substantial factor" in the victim's economic loss. (*Ibid.*) "The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 978.)

In the instant case, there is a direct causal chain between defendants' criminal activity and Correia's relocation expenses. But for defendants' conduct, Correia would not have needed to serve as a witness; but for having to serve as a witness, Correia would not have been subject to threats and harassment; and, but for being subject to threats and harassment, Correia would not have been forced to relocate four times. Accordingly, direct causation is easily established. The mere fact the threats were made by parties other than Velyines and McCormick does nothing to erase the role they played in the chain of events that led to Correia's economic loss.

As to the issue of proximate cause, it cannot be said that defendants' actions played only a "negligible" or "theoretical" role in Correia's being forced to relocate. (*Rutherford v. Owens-Illinois, Inc.*, *supra*, 16 Cal.4th at p. 978.) In *People v. Jones, supra,* 187 Cal.App.4th at page 427, quoting *People v. Cervantes* (2001) 26 Cal.4th 860, 871, the Third District Court of Appeal held that an intervening act only destroyed proximate causation if it was "'unforeseeable,'" "'extraordinary,'" and "'abnormal.'" Conversely, "'[i]f an intervening cause is a normal and reasonably foreseeable result of defendant's original act the intervening act is "dependent" and not a superseding cause, and will not relieve defendant of liability.'" (*People v. Jones*, *supra*, 187 Cal.App.4th at p. 427, quoting *People v. Cervantes*, *supra*, at p. 871.) Here, as witness intimidation by a

criminal defendant's family, friends, or agents is neither abnormal nor unforeseeable, we find that proximate causation was established, and the trial court did not abuse its discretion by ordering defendants to pay restitution for Correia's relocation expenses.

### *DISPOSITION*

The judgments are affirmed.

_____

Smith, J.

WE CONCUR:

_____

Levy, Acting P.J.

_____

Detjen, J.

10.