Filed 1/21/14  P. v. Flores CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B241025 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. KA095203) |
| JUSTIN TYLER FLORES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. George Genesta, Judge.  Affirmed as modified.

Susan Wolk, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II, and Marc A. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted Justin Tyler Flores of one count of shooting at an occupied motor vehicle, and found true an allegation that he personally and intentionally discharged a handgun, causing great bodily injury to the victim. On appeal, Flores contends: (1) insufficient evidence supported a jury finding that he was the shooter; (2) the prosecutor engaged in numerous instances of prejudicial misconduct; (3) the trial court abused its discretion by permitting supplemental argument on reasonable doubt in response to a jury request; (4) the trial court erred in failing to sua sponte instruct the jury on how to use evidence of uncharged offenses; (5) the court erred in failing to sua sponte instruct the jury on the lesser included offense of grossly negligent discharge of a firearm; (6) the trial court deprived him of a fair trial by limiting the defense to two character witnesses; (7) he was denied effective assistance of counsel; (8) the trial court committed multiple sentencing errors; (9) the sentence imposed constituted cruel and unusual punishment; and (10) the clerk's transcript contains an error and must be amended to properly reflect a parole revocation fine. We modify the judgment to reflect a parole revocation fine and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### Prosecution Evidence

One evening in August 2011, Luis Orellana was riding home from work with his sister and two cousins. His sister, Adriana Orellana, was driving.[1] Luis sat in the front passenger seat. His two cousins, John Iraheta and Mariela M., sat in the back seat. Luis and his cousins noticed an SUV driving next to them was behaving unusually. The SUV pulled next to them, slowed, and dropped back and forth in traffic. Iraheta and Mariela saw two men in the SUV. Mariela thought the men were trying to flirt with Adriana. The driver's side window of the SUV was rolled down. The driver's arm was resting on the open window. He wore a white T-shirt and a blue and gray Dodgers baseball cap. Iraheta saw a tattoo on the driver's forearm. The driver was looking in the Orellanas' car.

---

[1] To avoid confusion, we refer to Luis and Adriana Orellana by their first names in this factual summary.

Iraheta and Mariela saw the driver point a gun and shoot into the Orellanas' car. Luis was hit in the head. Soon after the shooting, Iraheta identified Flores as the shooter from a photographic six-pack lineup. Mariela was unable to identify the driver from a six-pack, but she identified Flores as the driver at a preliminary hearing. Adriana identified Flores as the driver from a six-pack lineup soon after the incident, but admitted at trial that she did not see anyone in the act of shooting.

Flores drove away from the scene after the shooting. In the process, he crashed into a parked car and eventually abandoned the SUV. In the execution of a search warrant, police found two gun cleaning kits and a gun case in Flores's bedroom, and the hat he was wearing during the incident. Gunshot residue was identified on the hat.

Luis survived the shooting but lost hearing in his right ear. His ear was ripped apart. Doctors reconstructed his face, leaving in plates and bullet fragments. He has a weight on his eyelid because the nerves are damaged such that he cannot close the eyelid or lift his eyebrow. Vision in his right eye is blurry. At the time of trial, he could not fully open his jaw. He faced more surgeries to repair damage to his head, eyebrow, and jaw.

### *Defense Evidence*

Flores testified to the following. On the evening of the incident, Flores was driving his SUV with a friend, Jose Mendez, in the passenger seat. Flores and Mendez saw a "cute girl" in a nearby car. Flores pulled next to her car, tried to get her attention, and began flirting. Because of traffic, Flores fell behind the Orellanas' car a few times, then drove to catch up. As Flores and Mendez were trying to get Adriana's attention, Mendez said a guy in the car was "dogging" them. Flores asked Mendez what he was talking about, indicating he did not see anyone looking at them that way and Mendez was "tripping." The next thing Flores knew, Mendez was leaning over Flores with his left arm out of the window. Flores was scared. He heard a gunshot. He asked Mendez why he had shot at the other car. Flores did not know Mendez had a gun in the car with them. Flores knew Mendez owned a gun, but did not know Mendez ever carried it with him. Flores panicked. He sped away and hit two parked cars. He stopped the car, then began

3

calling people to ask for a ride. Flores and Mendez went to Mendez's house. At Mendez's brother's suggestion, Flores called 911 to report his SUV stolen. He made a second similar report the next day. He lied because he was scared. Flores had not seen Mendez since the day of the shooting. He did not know of Mendez's whereabouts.

Flores had a tattoo only on his left upper arm, not on his forearm. Two witnesses testified they had known Flores for years and knew him to be peaceable and nonviolent.

The People charged Flores with attempted first degree murder (Pen. Code, §§ 187, subd. (a), 664) and shooting at an occupied motor vehicle (§ 246). The jury acquitted Flores of attempted murder, but found him guilty of shooting at an occupied motor vehicle. The jury also found true the allegation that Flores personally and intentionally discharged a firearm, causing great bodily injury, within the meaning of section 12022.53, subdivision (d). The trial court sentenced Flores to the high term of seven years on the shooting at an occupied motor vehicle count, and imposed a consecutive 25-years-to-life term for the intentional discharge of a firearm resulting in great bodily injury enhancement, for a total prison term of 32 years to life.

## DISCUSSION

### I.      Substantial Evidence Supported the Conviction

Flores contends there was insufficient evidence to support the conviction. He argues there was no credible or solid evidence identifying him as the shooter. We disagree.

" 'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." [Citation.]' [Citation.]" (*People v. Wilson* (2010) 186 Cal.App.4th 789, 805.) We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People v. Virgil* (2011) 51 Cal.4th 1210, 1263.)

4

Flores admitted he was driving the SUV during the incident. Thus the only question is the sufficiency of the evidence establishing he was the shooter. Both Iraheta and Mariela identified Flores as the shooter. Iraheta testified Flores was wearing a T-shirt during the incident. He saw Flores's arm, with tattoos. Iraheta testified he saw tattoos on Flores's forearm, instead of the upper arm where the tattoos were actually located. This inconsistency did not render his testimony entirely unbelievable or inconsequential. Iraheta and Mariela both saw Flores at close range and saw him holding the gun pointed at their car. The testimony of a single witness may be sufficient to support a conviction. Iraheta's and Mariela's testimony was not physically impossible or inherently improbable. (*People v. Jones* (2013) 57 Cal.4th 899, 963-964.) Their testimony provided a sufficient basis for the jury to conclude Flores was the shooter.

## II. Prosecutorial Misconduct

Flores argues he did not receive a fair trial due to multiple instances of prejudicial prosecutorial misconduct. However he concedes he did not object on the basis of prosecutorial misconduct in the trial court. It is well established that prosecutorial misconduct must be objected to in the trial court to create a basis for relief on appeal. (*People v. Fuiava* (2012) 53 Cal.4th 622, 679-680 (*Fuiava*); *People v. Riggs* (2008) 44 Cal.4th 248, 298.) Yet, anticipating this problem, Flores also contends his counsel was ineffective for failing to object. This is the lens through which we primarily consider Flores's prosecutorial misconduct arguments. Reversal is not warranted.

To establish entitlement to relief based upon a claim of ineffective assistance of counsel, the burden is on the defendant to show "(1) trial counsel failed to act in the manner to be expected of reasonably competent attorneys acting as diligent advocates and (2) it is reasonably probable that a more favorable determination would have resulted in the absence of counsel's failings." (*People v. Lewis* (1990) 50 Cal.3d 262, 288; *Strickland v. Washington* (1984) 466 U.S. 668 (*Strickland*).) A defendant establishes a reasonable probability of a more favorable determination when he persuades a reviewing court that the result of his trial was fundamentally unfair or unreliable. (*Strickland,* at p. 694.)

5

" 'Under California law, a prosecutor commits reversible misconduct if he or she makes use of "deceptive or reprehensible methods" when attempting to persuade either the trial court or the jury, and it is reasonably probable that without such misconduct, an outcome more favorable to the defendant would have resulted. [Citation.] Under the federal Constitution, conduct by a prosecutor that does not result in the denial of the defendant's specific constitutional rights—such as a comment upon the defendant's invocation of the right to remain silent—but is otherwise worthy of condemnation, is not a constitutional violation unless the challenged action " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " [Citation.]' [Citation.]" (*Fuiava, supra,* 53 Cal.4th at p. 679.)

### A. Alleged Misconduct Regarding Flores's False Statements to Law Enforcement, His False Statements to His Attorneys, and His Failure to Reveal His Exculpatory Version of Events Until Trial

### i. Background

During Flores's testimony on his own behalf, his counsel asked if he "stuck to" his story about the SUV being stolen. Flores said he persisted in repeating this false story because he was scared and he was afraid to admit he lied. On cross-examination, the prosecutor asked Flores about his false statements to law enforcement. Flores admitted he waived his *Miranda*[2] rights and agreed to talk to a detective. He admitted he lied to the detective, twice in calls to 911, and the day he was arrested.

The prosecutor also asked about Flores's failure to reveal his exculpatory version of events at a later date:

"[Prosecutor]: Did you ever – ever, until today –tell any judge—there was a D.A. on the case before me; is that right?

"[Flores]: Yes.

"Q: He was in the courtroom a little while ago; right?

"A: Yes.

---

[2]      *Miranda v. Arizona* (1966) 384 U.S. 436.

"Q: He did your preliminary hearing?

"A: Yes

"Q: You appeared in front of a bunch of judges; right?

"A: Correct.

"Q: You never told any judge, never told any prosecutor, never told any law enforcement officer, detective, anybody this story until about an hour ago; isn't that true?

"A: True."

On redirect, Flores's counsel returned to the topic:

"Q: Who did you finally tell the truth about this matter to?

"A: You.

"Q: Thank you. When did that happen?

"A: The second time you came to see me.

"Q: That was quite a few months ago; correct?

"A: Correct.

"Q: At first, you even told me that your car had been stolen; isn't that true?

"A: True.

"Q: What made you change your mind? What made you tell me a different story?

"A: I was tired of covering up for somebody.

"Q: And during the time – before you met me, you had another attorney; right?

"A: Right.

"Q: That attorney told you – advised you not to talk to police officers or district attorneys; correct?

"A: Correct.

"Q: I also advised you not to talk to police officers or district attorneys; correct?

"A: Yes.

"Q: While you were in custody and while you were represented, you were advised not to talk to people; isn't that true?

"A: True."

On re-cross, the prosecutor asked: "Whatever attorney represented you before, you lied to that attorney; right?" Flores admitted he lied to his first attorney. The prosecutor elicited further testimony that Flores did not tell his trial version of events to the investigating officer or other law enforcement officers he encountered before he ever saw an attorney in court.

In his closing arguments, the prosecutor argued Flores had made multiple prior inconsistent statements: "It was clear he was lying based on all the evidence you had, but he admitted, yeah, I lied. Started out with not telling his mom the whole truth, lying to 911. Again, going on and on and on, all the way through his attorneys, even lying to them. Prior inconsistent statements." In his rebuttal argument, the prosecutor again argued Flores lied to 911, the officer taking his report, the investigating officer, his mother, and to both of his attorneys.

### ii. Prosecution questioning on Flores's false statements to law enforcement

Flores asserts the prosecutor improperly commented on Flores's decision to remain silent, thereby violating his right against self-incrimination. Under *Doyle v. Ohio* (1976) 426 U.S. 610 (*Doyle*), a defendant's silence at the time of arrest, and after receiving *Miranda* warnings, cannot be used to impeach the defendant at trial without violating his or her Fourteenth Amendment right to due process. (*Id.* at p. 619.) "However, *Doyle* does not apply when a defendant presents exculpatory testimony at trial inconsistent with a voluntary post-*Miranda* statement." (*People v. Collins* (2010) 49 Cal.4th 175, 203 (*Collins*).) Here, Flores waived his right to silence and repeatedly told law enforcement a false story about his SUV being stolen. The prosecutor could not properly question him about the inconsistencies in these statements and his trial testimony. (*Id.* at pp. 203-205.) This was not *Doyle*-based misconduct. Defense counsel was not ineffective for failing to object.

8

### iii. Prosecutor questioning on Flores's false statements to his attorneys, and failure to tell exculpatory version to judges, prosecutors, etc.

Flores contends the prosecutor engaged in misconduct in asking Flores whether he lied to his attorneys because the questions violated the attorney-client privilege, and defense counsel should have objected. However, Flores waived the privilege by testifying on the topic on direct examination, at least with respect to Flores's communications with his second attorney. Defense counsel elicited testimony that the first time Flores told his exculpatory version of events was when he told counsel, and testimony that he lied to counsel before he admitted his involvement in the crime. Having introduced this line of inquiry in his own defense, Flores could not then argue the prosecutor was forbidden from examining him on the same issues. (*People v. Wilson* (2005) 36 Cal.4th 309, 336.) The prosecutor did not engage in misconduct by asking follow up questions about Flores's false statements to his second attorney when he had already answered similar questions posed by his own counsel.

However, Flores's counsel did not directly ask him about his communications with his first attorney, thereby raising some question whether Flores waived the attorney-client privilege as to those communications. The propriety of the prosecutor's questions regarding Flores's failure to tell the prosecutors or judge his exculpatory version of events is also questionable, since Flores was presumably represented by counsel at any point at which he could have spoken to a prosecutor or judge. (See *Collins*, *supra,* 49 Cal.4th at p. 205 [prosecution questions on voluntary post-*Miranda* statements to law enforcement posed no *Doyle* error, but portions of cross-examination directed at defendant's failure to notify prosecutor or police of alibi after charges were filed and counsel was appointed were "potentially more problematic"].)

Yet, we need not decide whether the prosecutor's questioning constituted misconduct, or whether counsel was ineffective for failing to object. Assuming defense counsel should have objected to prosecutor questions touching on attorney-client privileged communications between Flores and his first attorney, or on Flores's failure to tell his exculpatory version of the incident to a prosecutor or judge, we conclude it is not

9

reasonably probable a more favorable determination would have resulted absent counsel's failings. Even if the court sustained the objections and prevented the jury from hearing any evidence about Flores's statements, or lack of statements, to anyone after the right to counsel had attached, the jury still would have heard the extremely damaging evidence that Flores called in two false reports to 911. The jury would also have learned that rather than remaining silent after hearing a *Miranda* advisement, Flores voluntarily repeated the false stolen SUV story to law enforcement.[3] Since the prosecutor could permissibly ask about Flores's false statements to law enforcement, Flores essentially contends the jury should have only heard that he told a false story to law enforcement, and nothing more about when, before trial, if at all, he first revealed the version of events related in his trial testimony. We do not find it reasonably probable that had the evidence stopped at that point, the jury would have been any more likely to find Flores's exculpatory trial testimony credible. The record does not establish that the result of the trial was fundamentally unfair or unreliable. We find no basis for reversal due to ineffective assistance of counsel in the failure to object to the challenged prosecution questioning.

### B. Closing Argument

Flores contends many of the prosecutor's statements during closing argument constituted prosecutorial misconduct. These contentions are forfeited as discussed above. (*People v. Sapp* (2003) 31 Cal.4th 240, 310.) But we also reject his related claim of ineffective assistance of counsel because we conclude there was no prosecutorial misconduct warranting a defense objection.

" 'To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In

---

[3] We also note that although defense counsel did not object to the prosecutor's questions about Flores's failure to tell the prosecutor or judge his version of events, on redirect counsel elicited testimony indicating he and the prior defense counsel had advised Flores not to talk to police or prosecutors.

conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' [Citation.]" (*People v. Dykes* (2009) 46 Cal.4th 731, 771-772 (*Dykes*).) As discussed in detail below, Flores has not met his burden to show a reasonable likelihood the jury understood the prosecutor's comments in an improper manner.

### i. Suggesting Fernando Mendez was available as a defense witness and pointing out the lack of evidence to corroborate Flores's testimony

Flores asserts the prosecutor engaged in misconduct by suggesting Mendez's brother, Fernando Mendez, could have been called as a defense witness, and implying Flores had the duty to produce him. Flores argues the prosecutor's comments introduced facts outside the evidence and lessened the People's burden of proof. We disagree.

In his closing argument, the prosecutor contended Flores offered no evidence to corroborate his version of events. The prosecutor argued the defense knew Fernando Mendez lived down the street from Flores, and Flores could have brought him in as a witness.[4] This was argument, based on inferences the jury could draw from the evidence. Flores testified the Mendez family lived, and continued to live, on the same street as Flores's family. The defense cross-examination of an investigating police officer elicited testimony that the police interviewed Fernando Mendez in the course of their investigation. Flores also testified that Fernando Mendez was at the Mendez house immediately after the shooting, although there was no specific evidence as to whether Fernando Mendez resided or continued to reside in the house. We disagree that this discrepancy suggested the prosecutor was referencing evidence from outside the record, or making statements based on his personal knowledge about Fernando Mendez's

---

[4] The prosecutor stated: "Is Fernando Mendez—first of all, was there any evidence whatsoever of anything other than that the detective talked to him? Is there any evidence of his statement? . . . [¶] If it was relevant, if it was important, Fernando – they know where he lives. Right down the street. Could have brought him in if he had something important to say. So that's a complete red herring. It has nothing to do with anything relevant in this case."

11

availability as a witness. We do not find it reasonably likely the jury interpreted the prosecutor's argument in that manner.

We also disagree that the prosecutor acted improperly in arguing no evidence was offered to corroborate Flores's testimony. The People may properly comment on a defendant's failure to call logical defense witnesses. (*People v. Thomas* (2012) 54 Cal.4th 908, 945 [no misconduct for prosecutor to argue no witnesses came forward to provide alibi evidence for defendant]; *People v. Brady* (2010) 50 Cal.4th 547, 565-566 [no misconduct for prosecutor to argue defendant did not present any evidence suggesting anyone else committed the crime]; *People v. Carter* (2005) 36 Cal.4th 1215, 1266-1267 [no misconduct for prosecutor to argue nothing prevented defendant from offering witnesses to explain why defendant was in the car with property linking him to victims].) The prosecutor's comments permissibly noted the defense failure to offer logical material evidence, and did not suggest the defense had the burden of proof instead of the People. (*People v. Lewis* (2009) 46 Cal.4th 1255, 1304.)

Moreover, the court properly instructed the jury that neither side was required to call all witnesses who might have information, or to produce all physical evidence that might be relevant. The court also instructed the jury that the lawyer's statements were not evidence. We presume the jury followed the court's instructions. (*People v. Friend* (2009) 47 Cal.4th 1, 33 (*Friend*); *People v. Gray* (2005) 37 Cal.4th 168, 217.) Thus, we find no prejudicial prosecutorial misconduct.

Similarly, even if the prosecutor's comments were improper, we would not find ineffective assistance of counsel for failure to object. "Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' [Citation.] Defendant's burden is difficult to carry on direct appeal, as we have observed: ' "Reviewing courts will reverse convictions [on direct appeal] on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or her] act or omission." ' [Citation.]" (*People v. Lucas* (1995) 12 Cal.4th 415, 436-437.)

12

Here, defense counsel may reasonably have concluded it was better to allow the prosecutor's comments to pass rather than objecting and drawing more attention to the fact that Fernando Mendez was not offered as a defense witness. We cannot conclude there was no rational tactical basis for not objecting to these portions of the prosecutor's closing argument. (*People v. Vines* (2011) 51 Cal.4th 830, 876; *People v. Lopez* (2008) 42 Cal.4th 960, 972 (*Lopez*).)

### ii. Expressions of "personal opinion" as to Flores's guilt

Flores asserts several prosecutor statements constituted misconduct because they expressed the prosecutor's personal opinion of Flores's guilt, such as: "The defendant did it. Why? I don't know. He wouldn't tell us on the stand. . . . Shame on him for not manning up and taking responsibility"; statements that Flores was lying whereas the People's case was "based on the truth"; and the prosecutor's assertion that the character witness's testimony was of limited value because, in general, people do not want to believe someone they know could commit a crime, noting "*If my brother got charged with a serious crime, I'd say the same thing.*" We find no misconduct.

In *People v. Bain* (1971) 5 Cal.3d 839, 848, the court held a prosecutor may not "express a personal opinion or belief in a defendant's guilt, where there is substantial danger that jurors will interpret this as being based on information at the prosecutor's command, other than evidence adduced at trial." There was no such danger here. Although the prosecutor asserted Flores was lying, he did not suggest this was based on evidence beyond what was presented to the jury. The prosecutor's statements were based on Flores's admission that he made false statements to the police, the evidence against him, and the implausibility of Flores's version of events. (*Dykes, supra,* 46 Cal.4th at p. 769.) It is not misconduct for the prosecutor to suggest the defendant has fabricated a defense when there is evidence to support the suggestion. (*Lopez, supra,* 42 Cal.4th at p. 971; *People v. Mitcham* (1992) 1 Cal.4th 1027, 1081-1082.) We also disagree that the prosecutor's comments regarding character witnesses improperly denigrated those witnesses. Instead, the prosecutor permissibly argued, based on common knowledge, about the weight the jury should afford the witnesses' testimony.

### iii. Alleged misstatement of facts regarding existence of Mendez

Flores now challenges the prosecutor's statements asserting Flores offered no evidence of Jose Mendez's existence, except his own testimony.[5] On appeal, Flores argues the prosecutor misstated the facts because there was evidence of a second person in the SUV, and evidence that law enforcement interviewed Fernando Mendez. Flores further contends his testimony that Mendez was the SUV passenger, and that Fernando Mendez is Mendez's brother, was unrebutted. However, this evidence did not render the prosecutor's argument a misstatement of facts, or a reference to facts not in evidence. It was accurate for the prosecutor to state that, *aside* from Flores's testimony, there was no evidence offered about Jose Mendez.

It is not reasonably likely the jury understood these comments in an improper manner. The point was that Flores was not credible, and his testimony was uncorroborated by logical material evidence. This was a proper comment on the evidence.

### iv. Denigration of defense counsel

Flores asserts the prosecutor "impliedly denigrated" defense counsel by insinuating Flores's story changed only after meeting with trial counsel. The prosecutor did not make any explicit statements to this effect, and we are hard pressed to find even a suggestion of this in the record. Our review of the record indicates the prosecutor argued Flores lied for a long time, only changing his story late in the game. We will not infer the jury would have drawn a damaging implication about defense counsel from the prosecutor's statements. (*Dykes, supra,* 46 Cal.4th at pp. 769, 771-772; *Lewis, supra,* 46 Cal.4th at p. 1305.)

---

**5** The prosecutor argued: "Do you have any evidence – any evidence of Nene [Mendez]? Any corroboration other than the word of this admitted repeated liar? Do you have any evidence? Do you even know he exists? Was there a witness that says, 'this is a picture of Nene. This is a picture of his tattoo'—if he exists. Call his brother, neighbor. There's a guy named Nene; right? Do you even know he exists?"

### v. Improper appeal to jury's passion and prejudices

Flores challenges the prosecutor's statements that Flores's behavior was cold and cowardly, and that Flores was trying to get the jury to believe lies, as appealing to the passions and prejudices of the jury. The record does not support this contention. The prosecutor's comments were well within the bounds of permissible argument. (*Friend, supra,* 47 Cal.4th at p. 84; *People v. Stanley* (2006) 39 Cal.4th 913, 951-953.)

### vi. No cumulatively prejudicial misconduct

In light of the discussion above, we reject Flores's contention that reversal is required because the cumulative effect of prosecutorial misconduct deprived him of a fair trial. (*Fuiava, supra,* 53 Cal.4th at p. 625.)

## C. No Prejudicial Error in Prosecutor's Explanation of Reasonable Doubt or Trial Court Abuse of Discretion in Allowing Supplemental Argument

Flores contends the trial court erred in allowing supplemental argument on reasonable doubt, and that the prosecutor engaged in misconduct by incorrectly explaining the meaning of "abiding conviction." We find no prejudicial error.

### i. Background

In the original charge to the jury, the trial court gave CALCRIM No. 220, which provides in relevant part: "Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt." In his closing argument, the prosecutor stated: "The key phrase in [the reasonable doubt] instruction is abiding conviction. The proof must leave you with an abiding conviction that the charge is true. Abiding, meaning lasting. Conviction means belief. It's a lasting belief that the charge is true." While deliberating, the jury sent out a note requesting that "the judge give further guidance as to what 'abiding conviction' and 'reasonable doubt' mean."

15

After conferring with the parties, the court indicated the best solution would be to give counsel five minutes each to argue further what reasonable doubt meant in the context of the case. Neither side objected. The court reread CALCRIM No. 220. Then each side presented supplemental argument. Defense counsel contrasted reasonable doubt with the preponderance of the evidence and clear and convincing evidence standards. The prosecutor argued that "abiding conviction" had no special meaning. He argued "lasting" was another word for "abiding," and "conviction" meant "belief." He then repeated that the question for the jury was whether the evidence left the jurors with a "lasting belief."

### ii. The prosecutor's definition of "abiding conviction" was not misconduct

On appeal, Flores contends the prosecutor should have defined "abiding conviction" with words such as "evidentiary certainty" or referencing "near certitude of the guilt." He asserts "lasting" was too vague and subjective. We find no reasonable likelihood the jury understood the prosecutor's comments in an improper or erroneous manner.

Using "lasting belief" to explain the term "abiding conviction," is not incorrect. Indeed, several courts have used the word "lasting" in describing "abiding conviction." In *People v. Zepeda* (2008) 167 Cal.App.4th 25, 30-31, the court rejected a defendant's argument that the trial court was required to reference a subjective state of certitude when explaining reasonable doubt. The *Zepeda* court explained: "The phrase 'abiding conviction,' even without being described as 'felt,' adequately conveys the subjective state of certitude required by the standard of proof. The modifier 'abiding' informs the juror his conviction of guilt must be more than a strong and convincing belief. Use of the term 'abiding' tells the juror his conviction must be of a 'lasting, permanent nature,' and it informs him 'as to how strongly and how *deeply* his conviction must be *held*.' (*People v. Brigham* (1979) 25 Cal.3d 283, 290–291, italics added.) [¶] The term 'abiding conviction' in the reasonable doubt instruction 'convey[s] the requirement that the jurors' belief in the truth of the charge must be both long lasting and *deeply felt*.' [Citation.]" (*Zepeda,* at pp. 30-31, italics in original.)

16

Similarly, in *People v. Pierce* (2009) 172 Cal.App.4th 567, the court rejected a claim of prosecutorial misconduct based on the prosecutor's statements to the jury in which she disputed defense counsel's explanation of an abiding conviction as one that is lasting. The *Pierce* court explained: "The United States Supreme Court and the California Supreme Court, respectively, have described 'an abiding conviction' as one that is 'settled and fixed' [citation] and one that is 'lasting [and] permanent' [citation] . . . . [¶] The prosecutor's challenged statements concerning 'an abiding conviction' were not only brief, but they evoked a certain 'permanen[ce]' in that each juror's conviction that the charge was true had to be 'permanent' in that, considering the law and the facts presented, that conviction would 'abide,' that is, would not change, through the end of the trial when the jury rendered its verdict in open court. . . . Thus, there is no reasonable likelihood that the prosecutor's brief remarks led the jury to think that 'an abiding conviction' of the truth of the charge was something less than the self-evident nature of 'abiding' as 'settled and fixed' and 'lasting [and] permanent.' The record does not establish a reversible error." (*Id.* at pp. 573-574.)

Here, the prosecutor did not misstate the law by describing an "abiding conviction" as a "lasting belief." Not only was this consistent with relevant case law, it did not improperly lessen the People's burden of proof. We find no error.[6]

---

[6] We also reject the argument that Flores is entitled to relief because defense counsel was ineffective in his supplemental argument. Even if the quality of defense counsel's argument on the issue fell below that expected of a reasonably competent attorney, it is not reasonably probable that a more favorable determination would have resulted in the absence of counsel's failings. The prosecutor's argument was neither incorrect nor lessened the People's burden of proof, and the jury twice heard the standard instruction which appropriately and accurately explained the law. In addition, the jury was properly instructed that the trial court would instruct them on the law, and, in the event of a conflict between the trial court's instructions and the attorneys' arguments, the jury was to follow the trial court instructions. We presume the jury followed the trial court's instructions. Indeed, the jury's decision to acquit Flores on the attempted murder charge suggests it properly understood the reasonable doubt instruction.

### iii. The trial court properly allowed supplemental argument

In addition, we conclude the court properly allowed supplemental argument in response to the jury's request for additional instruction on reasonable doubt. Flores did not object below and has forfeited the issue. (*People v. Turner* (2004) 34 Cal.4th 406, 437.) But even had he preserved the argument we would find no error. As Flores acknowledges, California Rules of Court rule 2.1036 authorizes trial courts to allow attorneys to make additional closing arguments if a jury reaches an impasse. In *People v. Ardoin* (2011) 196 Cal.App.4th 102, 129, footnote 10, the court noted it had "no difficulty in concluding that the same rule applies when a jury expresses confusion and an impasse in its deliberations related to the governing law and instructions, particularly in light of the trial court's broad discretion to alter the sequence of trial proceedings." We agree with this reasoning. We find no abuse of discretion in the court's procedure.

We similarly cannot find defense counsel was ineffective for failing to object, or in failing to request additional time to prepare. There was nothing improper in the court's decision to allow supplemental argument, and, on the record before us, there is no reason to believe defense counsel needed more time to prepare argument on this fundamental concept that both sides had already discussed in their earlier arguments. Flores is not entitled to relief due to ineffective assistance of counsel on this issue. (*People v. Young* (2007) 156 Cal.App.4th 1165, 1171-1172.)

### III. The Trial Court Did Not Err in Failing to Sua Sponte Instruct the Jury On Evidence of Uncharged Offenses

Flores contends the trial court should have sua sponte instructed the jury it could only consider evidence of uncharged offenses for a limited purpose (CALCRIM No. 375).[7] The argument concerns evidence that during the incident, Flores committed two

---

**7** CALCRIM No. 375 informs the jury the People presented evidence that the defendant committed other uncharged offenses, and instructs that it may consider the evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses. The instruction further instructs that if the jury decides the defendant committed the uncharged offenses, it may only consider

18

"hit and runs" and filed false police reports. However, the legal authorities Flores relies upon to support his contention establish the argument has no merit. For example, in *People v. Collie* (1981) 30 Cal.3d 43, our high court explained:

"Evidence of past offenses may not improperly affect the jury's deliberations if the facts are equivocal, the charged offense is dissimilar, or the evidence is obviously used to effect one or more of the many legitimate purposes for which it can be introduced. (See Evid. Code, § 1101, subd. (b); [citation].) Neither precedent nor policy favors a rule that would saddle the trial court with the duty either to interrupt the testimony *sua sponte* to admonish the jury whenever a witness implicates the defendant in another offense, or to review the entire record at trial's end in search of such testimony. There may be an occasional extraordinary case in which unprotested evidence of past offenses is a dominant part of the evidence against the accused, and is both highly prejudicial and minimally relevant to any legitimate purpose. In such a setting, the evidence might be so obviously important to the case that *sua sponte* instruction would be needed to protect the defendant from his counsel's inadvertence. But we hold that in this case, and in general, the trial court is under no duty to instruct *sua sponte* on the limited admissibility of evidence of past criminal conduct." (*Id.* at p. 64.)

This was not an extraordinary case. The prosecution evidence regarding Flores's "hit and run" activity was offered as a description of how law enforcement determined he was involved in the shooting. The evidence of his filing false police reports was offered to show Flores's consciousness of guilt and his attempts to cover up his involvement in the shooting. These were not similar "past offenses" offered to suggest Flores had a propensity to engage in criminal conduct. Instead, the evidence was highly relevant to the central issue and offered for the legitimate purpose of demonstrating his knowledge, identity, and absence of mistake. (Evid. Code, § 1101, subd. (b).) There was little danger the jury would consider the evidence for the improper purpose of showing a general criminal disposition. (*People v. Bunyard* (1988) 45 Cal.3d 1189, 1225-1226.) The trial court did not have an obligation to sua sponte instruct on the limited admissibility of the hit and run or false report evidence.

that evidence for specified limited purposes, such as proving identity, intent, motive, knowledge, accident, or common plan.

We also reject the argument that defense counsel was ineffective for failing to request such an instruction. Even if the instruction had been given, it is not reasonably probable a result more favorable to Flores would have resulted, "since the likelihood of the jury's using the evidence for an improper purpose was so minimal under the facts of this case that any conceivable error was harmless." (*Bunyard, supra,* 45 Cal.3d at p. 1226.) Moreover, defense counsel could reasonably have concluded that even if such an instruction was appropriate, it would have the negative effect of highlighting the fact that Flores engaged in additional criminal activity in connection with the shooting. As things stood, the hit and runs and false police reports were characterized only as part of the story of the shooting, not separate crimes. Defense counsel could rationally determine this was more beneficial to his client than the potential utility of CALCRIM No. 375. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1052-1053.)

## IV. The Trial Court Did Not Err in Failing to Sua Sponte Instruct the Jury on the Lesser Included Offense of Grossly Negligent Discharge of a Firearm

We reject Flores's contention that the trial court erred in failing to sua sponte instruct on the lesser included offense of grossly negligent discharge of a firearm (Pen. Code, § 246.3).

"It is error for a trial court not to instruct on a lesser included offense when the evidence raises a question whether all of the elements of the charged offense were present, and the question is substantial enough to merit consideration by the jury. [Citation.] When there is no evidence the offense committed was less than that charged, the trial court is not required to instruct on the lesser included offense. . . . [¶] On appeal, we review independently whether the trial court erred in failing to instruct on a lesser included offense. [Citation.]" (*People v. Booker* (2011) 51 Cal.4th 141, 181.)

To convict Flores of shooting at an occupied motor vehicle, the People were required to prove Flores willfully and maliciously shot a firearm, and he shot the firearm at an occupied motor vehicle. (See CALCRIM No. 965; see also Pen. Code, § 246.) To secure a conviction for grossly negligent shooting of a firearm, the People would have been required to prove Flores intentionally shot a firearm; he did so with gross

20

negligence; and the shooting could have resulted in the injury or death of a person.[8] Here, there was no substantial evidence that Flores was guilty of anything less than a willful and malicious shooting at an occupied motor vehicle. The prosecution evidence established that Flores deliberately pointed a gun at the Orellana car and fired. Flores contended he was not the shooter. There was no evidence that, although Flores was the shooter, his behavior was only grossly negligent, rather than willful and malicious. Nor is there evidence that Flores shot the gun anywhere other than directly at an occupied motor vehicle. (See *Ramirez*, at p. 990.) Neither the eyewitness evidence, nor Flores's testimony, supported such a theory.

We reject Flores's contention that his lack of a criminal record or the absence of a confession was sufficient to warrant instruction on the lesser offense. While these factors may have cast doubt on Flores's guilt generally, they did not provide an evidentiary basis for the jury to conclude he was guilty only of a grossly negligent shooting. Lesser included offense instructions are "required only where there is 'substantial evidence' from which a rational jury could conclude that the defendant committed the lesser offense, and that he is not guilty of the greater offense. [Citations.]" (*People v. DePriest* (2007) 42 Cal.4th 1, 50.) There was no such substantial evidence in this case. The trial court was not required to sua sponte instruct on grossly negligent shooting of a firearm. (*People v. Valdez* (2004) 32 Cal.4th 73, 116 [there must be evidence a reasonable jury could find persuasive to warrant instruction on lesser offense].)

---

[8] CALCRIM No. 965 explains: "Someone commits an act *willfully* when he or she does it willingly or on purpose. [¶] Someone acts *maliciously* when he or she intentionally does a wrongful act or when he or she acts with the unlawful intent to disturb, defraud, annoy, or injure someone else." CALCRIM No. 970 explains that a person acts with gross negligence when he acts in a reckless way that creates a high risk of death or great bodily injury, and a reasonable person would have known that acting in that way would create such a risk. Or "[i]n other words, a person acts with gross negligence when the way he or she acts is so different from the way an ordinarily careful person would act in the same situation that his or her act amounts to disregard for human life or indifference to the consequences of that act." The legislative history indicates the "phenomenon that gave rise to [Penal Code section 246.3] was celebratory gunfire in an urban setting." (*People v. Ramirez* (2009) 45 Cal.4th 980, 990 (*Ramirez*).)

Further, in the absence of any evidence to support a theory of grossly negligent discharge of a firearm rather than shooting at an occupied vehicle, we cannot conclude defense counsel was ineffective for failing to request instruction on the lesser included offense.

## V. The Trial Court Did Not Limit the Defense to Two Character Witnesses

Flores contends the trial court abused its discretion by limiting Flores to offering testimony from only two character witnesses. Flores mischaracterizes the record on this point. Although the trial court cautioned against having cumulative testimony, it did not limit the defense to only two character witnesses. In every discussion on the issue, defense counsel voluntarily indicated he would only call some of the available character witnesses. Before trial began, the court and defense counsel had the following colloquy about the character witnesses:

"[Defense Counsel]: I haven't provided a formal witness list because all I have is character witnesses, but I will read four potential character witnesses, if the court wants me to.

"Court: Okay. If the four witnesses are overlapping, pick the best two.

"[Defense Counsel]: I'm not planning to call them all. I don't know what their schedules will provide me.

"Court: So we have a common understanding of a certain point where we get cumulative.

"[Defense Counsel]: I understand that. Don't plan to call more than two."

Later during the trial, the court asked how many character witnesses the defense planned to call. Defense counsel answered: "I have three of them. I'll call two of them." We cannot construe either exchange as the court limiting the defense's presentation of evidence. Initially, the court told defense counsel to pick the best two witnesses *if* the testimony was overlapping. After that comment, defense counsel did not object but indicated he did not intend to call more than two of the witnesses. The trial court was never called upon to allow or exclude testimony from more than two character witnesses. It was not an abuse of discretion for the court to caution against cumulative testimony. (*People v. Mincey* (1992) 2 Cal.4th 408, 439; see also Evid. Code, § 352.)

22

## VI.    No Ineffective Assistance of Counsel

Flores separately contends he received ineffective assistance of counsel. However, his appellate briefing on this issue merely lists a number of alleged defense counsel failures, without providing accompanying argument or legal authorities.[9]  This falls short of demonstrating either that counsel's actions fell below an objective standard of reasonableness when judged by professional norms, or that but for these failings the result of the trial would have been more favorable to him.  (*In re Cudjo* (1999) 20 Cal.4th 673, 687; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218; see *Strickland*, *supra,* 466 U.S. at pp. 687-696.)  Indeed, "all of [Flores's] claims suffer from the same defect—the present record does not preclude the possibility that defense counsel's actions were based upon reasonable strategic decisions . . . .  [U]nless the record reflects the reason for counsel's actions or omissions, or precludes the possibility of a satisfactory explanation, we must reject a claim of ineffective assistance raised on appeal.  [Citation.]  Such claims are more appropriately addressed in a habeas corpus proceeding."  (*People v. Ledesma* (2006) 39 Cal.4th 641, 746.)

## VII.    The Trial Court Did Not Abuse its Discretion in Sentencing Flores to the High Term on Count 2

The trial court sentenced Flores to the high term of seven years on the Penal Code section 246 count.  Flores contends this was an abuse of discretion because he did not have a criminal record, the case did not involve gang activity, and he was employed at the time of the offense.  However, the trial court properly took into consideration that Luis Orellana was a particularly vulnerable victim, and Flores's behavior after the shooting demonstrated he posed a serious danger to society.  (See Cal. Rules of Court, rule

---

**9**    Aside from issues we have addressed elsewhere in this opinion, Flores alleges defense counsel was deficient due to the failure to offer evidence to corroborate Flores's testimony; the failure to request jury instructions on motive and evidence another person was involved in the charged crimes; the failure to object to or seek redaction of a prosecution trial exhibit; the failure to argue Flores was improperly charged; the failure to file a discovery motion; and the failure to seek a continuance to prepare supplemental argument on reasonable doubt.

4.421(a)(3),(b)(1); *People v. Eades* (1979) 95 Cal.App.3d 688, 690 [victim particularly vulnerable where defendant shot from back seat of car, apparently without motivation or provocation].) The trial court concluded the aggravating circumstances outweighed the mitigating circumstances. We will not reweigh these valid factors on appeal. (*People v. Delgado* (2013) 214 Cal.App.4th 914, 919.) We find no abuse of discretion.

We also reject Flores's contention that the trial court improperly used the great bodily injury factor to impose both the enhancement under section 12022.53, subdivision (d) and the high term on count 2. The trial court indicated it was imposing the upper term based on the particular vulnerability of the victim and evidence that Flores posed a serious danger to society. The court did not suggest it was imposing the upper term based on the great bodily injury Orellana suffered. The aggravating factors the court relied upon to impose the upper term were distinct from Orellana's great bodily injury. (*People v. Yim* (2007) 152 Cal.App.4th 366, 369.) We find no error.

## VIII. The Sentence Did Not Constitute Cruel and Unusual Punishment

Flores argues the sentence imposed constituted cruel and unusual punishment because he had no criminal record or gang affiliation, and he was employed at the time of his arrest. Even were this claim preserved for appellate review we would reject it. (*People v. Vallejo* (2013) 214 Cal.App.4th 1033, 1045.) "Under the Eighth Amendment of the federal Constitution, 'the courts examine whether a punishment is grossly disproportionate to the crime.' [Citation.] 'Under the California Constitution, a sentence is cruel or unusual if it is so disproportionate to the crime committed that it shocks the conscience and offends fundamental notions of human dignity.' [Citation.]" (*Ibid.*)

We find no such disproportionate punishment here. Flores's crime was extremely serious and caused significant injury. Orellana lost hearing in one ear, and suffered blurred vision, nerve damage, and facial disfigurement as a result of the shooting. The crime itself was apparently unprovoked. Flores shot into a car containing four people, including Orellana's 13-year-old cousin. He then fled the scene and tried to hide his involvement by calling in false stolen vehicle reports and repeatedly lying to police. The jury rejected Flores's exculpatory version of events in which he was not the shooter.

Despite Flores's lack of criminal history, there was no evidence indicating Flores's actions were anything but willful and malicious. In light of these circumstances, the sentence was "neither 'grossly disproportionate' to his crimes nor so disproportionate as to shock the conscience and offend fundamental notions of human dignity." (*People v. Gray* (1998) 66 Cal.App.4th 973, 993, citing *Harmelin v. Michigan* (1991) 501 U.S. 957, 1001, and *In re Lynch* (1972) 8 Cal.3d 410, 424; *People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 843-846.)

As we reject this arguments on its merits we also decline to find Flores is entitled to relief for ineffective assistance of counsel due to counsel's failure to object to the sentence as cruel and unusual.

## IX. The Judgment Must Be Modified to Reflect a Parole Revocation Fine Rather than a Probation Revocation Fine

The parties agree the clerk's transcript and abstract of judgment erroneously indicate the trial court assessed a probation revocation fine, rather than a suspended parole revocation fine. We agree that the abstract of judgment must be corrected to reflect the fine pronounced in court. (*People v. Scott* (2012) 203 Cal.App.4th 1303, 1324.)

### DISPOSITION

The trial court is ordered to correct its minutes from the sentencing hearing of May 4, 2012, and the abstract of judgment, by striking the reference to the imposition of a probation revocation fine, and indicating a suspended $500 parole revocation fine was assessed. The trial court is further ordered to forward a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

                                                                    BIGELOW, P. J.

We concur:


        FLIER, J.                    GRIMES, J.

25